No. 106,083

S<small>TATE OF</small> K<small>ANSAS</small>, *Appellee*, v. T<small>OMMY</small> R<small>AY</small> J<small>AMES</small>, *Appellant*.

(349 P.3d 457)

Opinion filed May 8, 2015.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*James T. Ward*, deputy county attorney, argued the cause, and *Stephen A. Hunting*, county attorney, *Heather R. Jones*, former county attorney, and *Derek Schmidt*, attorney general, were on the briefs for appellee.

The opinion of the court was delivered by

STEGALL, J.: Tommy Ray James was pulled over for driving with a defective headlight. Smelling of alcohol, James stepped out of his vehicle to examine the headlight. He was able to produce his driver's license to the officer but had no proof of insurance. After initially denying that he had been drinking, James admitted he had had a few. When Demi Scott, James' passenger, stepped out of the vehicle, the officer was able to see an open container of alcohol behind the driver's seat. James admitted it was in the vehicle, and he was then handcuffed and advised of his rights.

James told the officer the two cups in the cup holders contained alcohol that he and Scott had been drinking. While searching for additional alcohol containers, the officer found a large plastic bag of what was later confirmed to be marijuana inside the glove box. During questioning on the scene, James denied the marijuana was his and suggested that it might belong to his brother. After being advised of her rights, Scott too disclaimed any ownership of the marijuana. At this point, James advised the officer that he did not know his brother's phone number but that it was stored in his phone, which he indicated was in his hip pocket.

There is a video recording of this encounter showing James moving his hip towards the officer and the officer reaching into James' hip pocket to retrieve the phone (while James is handcuffed) and asking at the same time, "Are there going to be any text messages on here related to drug sales?" To which James answered, "No, but I would tell you . . . but that's but I'm saying I'm thinking that I had his number . . . I may not . . . . Ain't no text messages noth-

[unintelligible] nothing about drugs." The officer repeated, "Nothing about drugs?" James replied, "No sir."

The officer then read through James' text messages, finding messages from potential marijuana buyers asking James if he had any to sell. The officer went back to search the car for drug paraphernalia and discovered a drug scale. James claimed that the scale was decorative only, something he hung from his rear view mirror, which he had removed when pulled over.

James was ultimately charged with possession of marijuana with intent to sell or distribute, unlawfully arranging sales or purchases of controlled substances using a communication facility, felony possession of drug paraphernalia, no tax stamp affixed, ignition interlock device violation, no proof of insurance, transporting an open container, and defective equipment. James moved to suppress much of the evidence against him, including the text messages discovered on his phone. Following an evidentiary hearing, the district court declined to suppress the text messages on the grounds that the search of the cell phone was a lawful search incident to arrest. Additionally, James lodged a number of evidentiary objections to the admission of the text messages. The district court again declined to exclude the cell phone evidence but did condition its admission on a limiting instruction that the evidence could only be used to show James' knowledge of the marijuana and his intent to sell or distribute it.

James was convicted of possession of marijuana with the intent to distribute, possession with the intent to use drug paraphernalia, possession of marijuana without a tax stamp, transporting alcohol in an open container, and operating a motor vehicle with defective equipment. Appealing to the Court of Appeals, James claimed: (1) The warrantless search of his cell phone violated the Fourth Amendment to the United States Constitution; (2) the district court erred by admitting the text messages at trial; (3) the district court erred in permitting the officer to give opinion testimony about the meaning of the text messages; (4) prosecutorial misconduct; (5) sufficiency of the evidence; and (6) cumulative error. A panel of the Court of Appeals found no error and affirmed James'

convictions. *State v. James*, 48 Kan. App. 2d 310, 311, 288 P.3d 504 (2012).

In particular, the panel noted that "neither the United States Supreme Court nor the Kansas Supreme Court has directly addressed" whether a cell phone search, such as occurred in this case, can be conducted as a valid search incident to arrest. *James*, 48 Kan. App. 2d at 318. The panel observed that the United States Supreme Court held in *United States v. Robinson*, 414 U.S. 218, 236, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973), that a warrantless search of a crumpled cigarette package found in an arrestee's pocket is a permissible search incident to arrest. *James*, 48 Kan. App. 2d at 318-19. The panel then considered the burgeoning split of authority from courts in other jurisdictions to have considered whether the rule in *Robinson* should extend to warrantless cell phone searches incident to arrest, including an unpublished Tenth Circuit decision that " 'the permissible scope of a search incident to arrest includes the contents of a cell phone found on the arrestee's person.' " 48 Kan. App. 2d at 320-21 (quoting *Silvan W. v. Briggs*, 309 Fed. Appx. 216, 225 [10th Cir. 2009]). Finally, the panel concluded that *Robinson* should apply and that "as part of a search incident to arrest, it is reasonable for a law enforcement officer to view the text messages contained in a cell phone found on an arrestee's person for evidence probative of criminal conduct." *James*, 48 Kan. App. 2d at 322.

This court granted James' petition for review reprising all of the arguments he made at the Court of Appeals. We exercise jurisdiction pursuant to K.S.A. 60-2101(b). Because we hold, as discussed below, that the lower court erred in not suppressing the text messages and that this error requires reversal, we need not discuss, and do not reach, any of James' other claims of error.

## DISCUSSION

Following the panel's decision on James' appeal, the United States Supreme Court ruled that a valid search incident to arrest does *not* extend to a search of a cell phone found on the arrestee's person. *Riley v. California*, 573 U.S. ___, 134 S. Ct. 2473, 2485, 189 L. Ed. 2d 430 (2014). *Riley* decided two consolidated cases—

one involving a smart phone and the other a less technologically sophisticated "flip" phone—both involving a warrantless search of a cell phone following arrest. The *Riley* Court declined to extend the *Robinson* rationale to the world of digital information, stating that "while *Robinson*'s categorical rule strikes the appropriate balance in the context of physical objects, neither of its rationales has much force with respect to digital content on cell phones." 134 S. Ct. at 2484. *Riley* held that the risks to officer safety and of evidence destruction are significantly lessened in the context of "digital data" and that the privacy interests at stake are significantly heightened because digital data storage devices such as cell phones "place vast quantities of personal information literally in the hands of individuals." 134 S. Ct. at 2484-85. Because a search for digital data on a cell phone "bears little resemblance to the type of brief physical search considered in *Robinson*," the Court declined "to extend *Robinson* to searches of data on cell phones" and instead ruled that "officers must generally secure a warrant before conducting such a search." 134 S. Ct. at 2485.

"[N]ewly announced rules of constitutional criminal procedure must apply 'retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception.' " *Davis v. United States*, 564 U.S. 229, 243, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011). *Riley* was decided while this case was pending on appeal. As such, *Riley* controls the constitutional issue in this case. Before resolving this case on constitutional grounds, however, it is incumbent upon us, in light of our recent decision in *State v. Julian*, 300 Kan. 690, 333 P.3d 172 (2014), to first decide whether James' claims must be decided as a matter of statutory, rather than constitutional, law. And *Julian* is only the latest in a line of cases from this court discussing the interplay between the statutory scope and the constitutional scope of permissible searches incident to arrest. Because we here undertake the task of providing needed clarity to this area of the law, and in the process overrule *Julian*, a detailed review of caselaw development is necessary.

*The statutorily prescribed scope of searches incident to arrest in Kansas*

The proper interpretation and construction of a statute is a question of law over which we exercise plenary review. *State v. Brown*, 298 Kan. 1040, 1057, 318 P.3d 1005 (2014). The fundamental rule of statutory interpretation is that the intent of the legislature is dispositive if it is possible to ascertain that intent. *State v. Looney*, 299 Kan. 903, 906, 327 P.3d 425 (2014). The language of a statute is our primary consideration in ascertaining the intent of the legislature. 299 Kan. at 906. Where such language is plain and unambiguous, it is typically determinative of legislative intent. *State v. O'Connor*, 299 Kan. 819, 822, 326 P.3d 1064 (2014). We must, however, construe statutes to avoid unreasonable or absurd results. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 918, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013).

In 1970, Kansas codified the scope of a lawful warrantless search incident to arrest at K.S.A. 1970 Supp. 22-2501:

"When a lawful arrest is effected a law enforcement officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of

"(*a*) Protecting the officer from attack;

"(*b*) Preventing the person from escaping; or

"(*c*) Discovering the fruits, instrumentalities, or evidence of the crime." L. 1970, ch. 129, sec. 22-2501.

At that time, K.S.A. 1970 Supp. 22-2501 was coextensive with the scope of constitutionally permissible warrantless searches incident to arrest as described in *Chimel v. California*, 395 U.S. 752, 762-63, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969). See *State v. Youngblood*, 220 Kan. 782, 784, 556 P.2d 195 (1976) ("[K.S.A. 22-2501 (Weeks)] setting forth the permissible scope of a search without a search warrant in Kansas, when made incidental to a lawful arrest, is patterned after . . . *Chimel*.").

But in 1981, the United States Supreme Court expanded the scope of permissible warrantless searches incident to arrest in *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768, *reh. denied* 453 U.S. 950 (1981). *Belton* permitted a search incident to arrest to extend beyond the person arrested to the passenger

compartment of the vehicle the person had occupied immediately prior to the arrest. 453 U.S. at 460. This development in constitutional interpretation gave rise to the potential of two different standards applicable in Kansas.

This court confronted that divide in *State v. Anderson*, 259 Kan. 16, 910 P.2d 180 (1996). The *Anderson* court declined to construe the intent of K.S.A. 22-2501 (Furse) as merely to codify and follow the constitutional law applicable to searches incident to arrest. *Anderson* rejected the claim that *Belton* "somehow altered the requirements of K.S.A. 22-2501, or should be considered supplemental thereto, and that *Belton* legitimizes the search herein, which was not in accordance with the statute." 259 Kan. at 21. *Anderson* held that while *Belton* may have expanded the scope of a constitutionally permissible warrantless search incident to arrest, it could not change the language adopted by the Kansas Legislature. "[T]he language employed in the statute controls" even if that language is "more restrictive than prevailing case law on the Fourth Amendment would permit." 259 Kan. at 22-23.

Since *Anderson* was decided, this court has repeatedly ruled that K.S.A. 22-2501 governs searches incident to arrest and sets forth the "permissible circumstances, purposes, and scope" of such searches. *State v. Pettay*, 299 Kan. 763, Syl. ¶ 4, 326 P.3d 1039 (2014); *State v. Carlton*, 297 Kan. 642, Syl. ¶ 4, 304 P.3d 323 (2013); *State v. Dennis*, 297 Kan. 229, Syl. ¶ 5, 300 P.3d 81 (2013); *State v. Conn*, 278 Kan. 387, 391, 99 P.3d 1108 (2004). While correct, this recitation of the interplay between K.S.A. 22-2501 and the Fourth Amendment is incomplete. The existence of a statute defining the scope of permissible circumstances and purposes of a search incident to arrest does not simply render the Fourth Amendment irrelevant to determining the lawfulness of warrantless searches incident to arrest. In fact, the Fourth Amendment may—depending upon the facts of any individual case—be not only relevant law, but governing law.

A more precise and complete articulation of the *Anderson* rule is that if and when a statute affords citizens of Kansas *greater* privacy protections against searches and seizures than the Fourth Amendment, then the statute governs. In other words, courts

should only apply a statutory standard to determine whether a search or seizure is lawful when the facts implicate a statutory provision that imposes greater restrictions on the government than does the Fourth Amendment. Any violation of a more restrictive standard created by statute would likewise be subject to a statutory harmlessness analysis. In areas where the statutory standard is either silent or is identical to the constitutional standard, however, it is proper for courts to decide such questions as a matter of constitutional law and to review violations using a constitutional harmlessness standard. Statutory silence, in particular, creates a void which must be filled by the constitutional standard.

In 2006, the legislature adopted a one word amendment to K.S.A. 22-2501. The previous language of subsection (c) reading "[d]iscovering the fruits, instrumentalities, or evidence of *the* crime" was changed to read "of *a* crime"—the italicized words representing the only change. (Emphasis added.) L. 2006, ch. 211, sec. 8. This court has previously discussed the legislative history of this change at some length, concluding that the change "may have been, at least in part, responsive to our holding . . . in *Anderson*." *State v. Henning*, 289 Kan. 136, 142-44, 209 P.3d 711 (2009). In 2005, the legislature had attempted, unsuccessfully, to abolish K.S.A. 22-2501 (Furse) altogether. A representative of the Kansas Attorney General's office testified in favor of repeal, claiming the codification of constitutional rights was bad policy as it " 'only [bred] conflict with prevailing case law.' " 289 Kan. at 143. Prior to adopting the 2006 amendment, the legislature heard testimony from a representative of the Kansas Bureau of Investigation who stated that the *Anderson* court's interpretation of K.S.A. 22-2501 (Furse) had limited law enforcement's ability to search and caused confusion and that the amendment was needed to realign Kansas statutory law with the constitutionally permissible scope of warrantless searches incident to arrest as set forth by the United States Supreme Court in *Belton. Henning*, 289 Kan. at 142.

Then, in 2009, the United States Supreme Court again modified the constitutionally permissible scope of warrantless searches incident to arrest under the Fourth Amendment. See *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009).

*Gant* limited the application of *Belton* and held that warrantless vehicle searches incident to arrest are unlawful unless "the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains *evidence of the offense of arrest.*" (Emphasis added.) 556 U.S. at 351.

Two months later, in *Henning*, this court was confronted with the question of whether the *Gant* decision once again rendered K.S.A. 22-2501 out of step with developments in Fourth Amendment jurisprudence. Clearly, it did. Only this time—by virtue of permitting a warrantless search incident to arrest for evidence of *any crime*—the Kansas statute as written was *more* expansive in scope than the Fourth Amendment, putting it on the wrong side of the constitutional limits as articulated in *Gant*. This is just what the *Henning* court found, stating: "To have a valid search incident to arrest, when there is no purpose to protect law enforcement present, the search must seek evidence to support the crime of arrest, not some other crime, be it actual, suspected, or imagined." 289 Kan. at 147. As such, *Henning* held that "[i]n view of *Gant*, we are compelled to strike down the current version of K.S.A. 22-2501(c) as facially unconstitutional under the Fourth Amendment." 289 Kan. at 148-49.

By striking subsection (c) in its entirety, the *Henning* court not only brought K.S.A. 22-2501 into conformity with *Gant*, it also eliminated the statutory basis for a search incident to arrest for evidence of the crime of arrest. Following *Henning*, law enforcement was once again left to guess whether warrantless searches incident to arrest for evidence of the crime of arrest were lawful pursuant to the constitutional standards announced in *Gant* or were unlawful pursuant to a more restrictive statutory scheme. The legislature finally put the problem of dueling standards to rest when it repealed K.S.A. 22-2501 in its entirety in 2011. L. 2011, ch. 100, sec. 22. Still, for the period between June 26, 2009, when *Henning* was published, and July 1, 2011, when K.S.A. 22-2501 was taken off of the books, the question remained.

It was this question that we took up last year in *Julian*. In *Julian*, the lower courts had relied on *Gant* to uphold a warrantless search

incident to arrest for evidence of the crime of arrest. We reversed, holding that "by relying on Fourth Amendment caselaw rather than the Kansas statute governing searches incident to arrest, the district court and the Court of Appeals applied the incorrect legal standard to this case. In doing so, the Court of Appeals reached an incorrect result." 300 Kan. at 691. We noted that when "dealing with an issue involving a search incident to arrest 'we need not discuss federal law further,' as federal caselaw applying the Fourth Amendment did not control such searches." 300 Kan. at 695 (quoting *Anderson*, 259 Kan. at 22).

The *Julian* court then reasoned that when *Henning* struck down subsection (c), the only valid statutory reasons for a search incident to arrest were to protect the officer from attacks and to prevent the person from escaping—the reasons articulated in the remaining subsections (a) and (b) of K.S.A. 22-2501. Recapitulating in some fashion its argument in *Anderson*, the State claimed *Gant* was controlling and, in the wake of *Henning* striking down subsection (c) concerning searches for evidence, *Gant* and Fourth Amendment caselaw should fill the resulting void and govern such searches.

*Julian* rejected the State's reliance on *Gant*, reasoning "K.S.A. 22-2501, and not Fourth Amendment caselaw, controlled the 'permissible circumstances, purposes, and scope' of the search." 300 Kan. at 701 (quoting *Conn*, 278 Kan. at 391). The holding of *Julian* announced that K.S.A. 22-2501 "represented the State's authority to adopt measures more protective of an individual's rights than the Fourth Amendment to the United States Constitution requires" and that the statute "did not authorize searches for the purpose of discovering evidence." 300 Kan. at 690, Syl. ¶¶ 2, 4. If we were to follow *Julian* in this case, we would find that because the search of James' cell phone was a search incident to arrest for evidence of the crime of arrest, and because the search occurred in December of 2009, it was not statutorily authorized and thus illegal. *Julian* gives the impression that the Kansas Legislature simply chose not to authorize warrantless searches incident to arrest for the purpose of discovering evidence of the crime of arrest. But the opposite is true. The legislature, in fact, intended to authorize

searches incident to arrest for evidence of the crime, among others. It merely went too far.

Here, as in *Julian*, there is a clear alternative basis on which to rule—the Fourth Amendment itself. By looking to the constitutional baseline to fill in a statutory silence, we can harmonize and give effect both to the constitutional limits on searches incident to arrest and to the permissible legislative intent behind K.S.A. 22-2501. Where a statute such as K.S.A. 22-2501 imposes greater restrictions on state action than are prescribed in the Constitution, the statute controls. Where such statutes are silent, however, either through legislative will or, as here, by virtue of subsequent judicial review, the constitutional standard governs the proper scope of permissible state action. To the extent the holding of *Julian* conflicts with this rubric, it is overruled.

Because the search of James' cell phone—as a search incident to arrest for evidence of the crime of arrest—was not expressly prohibited by the post-*Henning* statutory scheme, we now turn to a Fourth Amendment analysis of its legality.

### *The search of James' cell phone violated the Fourth Amendment.*

When the material facts are not in dispute, as here, we will exercise plenary review of the district court's ruling on a motion to suppress evidence. The State bears the burden to demonstrate a warrantless search was lawful. *Pettay*, 299 Kan. at 768.

The Fourth Amendment to the United States Constitution protects everyone's right to be secure in his or her person and not subject to unreasonable searches by the government. Without a warrant, a search is unreasonable unless it falls within a recognized exception. *State v. Canaan*, 265 Kan. 835, 840, 964 P.2d 681 (1998) (citing *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 [1967]). Both consent and a search incident to a lawful arrest are recognized exceptions in Kansas. *State v. Mendez*, 275 Kan. 412, 421, 66 P.3d 811 (2003), *overruled in part on other grounds by State v. Neighbors*, 299 Kan. 234, 246-49, 328 P.3d 1081 (2014).

The United States Supreme Court ruled last year that a valid search incident to arrest does not extend to a search of a cell phone

found on the arrestee's person. *Riley*, 134 S. Ct. at 2485. The State concedes that *Riley* forecloses the possibility that the search of James' cell phone was a valid search incident to arrest. Moreover, the State does not argue, and thus waives, any claim James' text messages are nevertheless admissible under the good-faith exception to the exclusionary rule. See *Neighbors*, 299 Kan. at 254-55; *State v. Hicks*, 282 Kan. 599, 617-18, 147 P.3d 1076 (2006). The State does, however, maintain that James consented to the search.

A valid consent requires two things: (1) There must be clear and positive testimony that consent was unequivocal, specific, and freely given and (2) the absence of duress or coercion, express or implied. *State v. Thompson*, 284 Kan. 763, 776, 166 P.3d 1015 (2007). "Voluntariness presents an issue of fact which is reviewed on appeal for substantial competent evidence. [Citation omitted.] The State bears the burden of establishing voluntariness." *State v. Richard*, 300 Kan. 715, 729, 333 P.3d 179 (2014).

The district court specifically found James did consent to a search of his cell phone for the limited purpose of finding James' brother's phone number. The entire encounter between James and the officers was video recorded, and that recording is a part of the record on appeal. At the time of the search, James had been arrested, read his *Miranda* rights, and was handcuffed and flanked by two armed officers. When asked by the officers where his cell phone was, James offered his right hip pocket to the officer who removed the phone, ostensibly for the purpose of finding James' brother's phone number. The State maintains that James' hip movement indicating the location of the cell phone, along with his statement that his brother's phone number might be contained in the phone's memory, amounted to a voluntary consent to the officer's search of the cell phone's text messages. We do not agree.

In *State v. Spagnola*, 295 Kan. 1098, 289 P.3d 68 (2012), the defendant had been pulled over during a traffic stop. After being asked to exit the car, the officer asked if he could search Spagnola's pockets. Spagnola said yes. The officer asked him to turn around and interlace his hands behind his back. The officer again asked to search his pockets, and again, Spagnola acquiesced. The officer then found the drugs Spagnola had been carrying.

When determining the validity of Spagnola's consent, we noted the appropriate inquiry is "whether a reasonable person would feel free to decline the officer's requests or otherwise terminate the encounter." 295 Kan. at 1107. In examining the surrounding circumstances to determine if the consent was coerced, " 'account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents.' " 295 Kan. at 1108 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 229, 93 S. Ct. 2041, 36 L. Ed. 2d 854 [1973]). Nonexclusive factors to determine whether a citizen's encounter with police is voluntary include "the display of a weapon, physical contact by the police officer, use of a commanding tone of voice, activation of sirens or flashers, a command to halt or to approach, and an attempt to control the ability to flee." *Spagnola*, 295 Kan. at 1108. Applying these principles, we found that Spagnola was not in a "posture or an environment in which it can be said that consent was voluntarily given free from coercion." 295 Kan. at 1108.

The circumstances surrounding James' acquiescence to law enforcement demands are even more coercive than those we considered in *Spagnola*. James did not unequivocally, specifically, and freely give consent for the officer to search the text messages on his cell phone, and his consensual responses were not free from duress or coercion. James did not provide legally effective consent for the officer's search.

*The unlawful search of James' cell phone was not harmless.*

Having found that the text messages on James' cell phone should have been suppressed before trial, we must next consider whether that error was harmless. The State argues the admission of the text messages was harmless, applying the statutory standard found at K.S.A. 2014 Supp. 60-261. But, as we have already discussed, this case turns on the application of the Fourth Amendment, not on K.S.A. 22-2501. A constitutional error may only be declared harmless when the party benefitting from the error proves beyond a reasonable doubt that the error did not affect the outcome of the trial in light of the entire record. *State v. Swindler*, 296 Kan. 670, 684, 294 P.3d 308 (2013), *cert. denied* 134 S. Ct. 1000 (2014).

In its attempt to meet this high burden, the State points to overwhelming evidence of the presence of a large amount of marijuana in the car James both owned and was driving at the time. Additionally, James admitted to owning the scale suitable for weighing marijuana found in the car. But James initially denied knowledge or ownership of the marijuana and said it may have belonged to his brother. At trial, James again denied knowledge or ownership of the marijuana, and another witness testified that he, not James, had put the marijuana in the car.

The text messages served a key evidentiary function to link James directly to the illicit drugs. The cell phone evidence was used by the State to demonstrate that James had knowledge of, and intent to control, the marijuana when another passenger was in the car and a third person claimed ownership of the marijuana at trial. In fact, the text messages were the subject of extensive pretrial litigation and a limiting instruction was given at trial that the text messages were being admitted solely to demonstrate James' knowledge and intent.

The State knew how important the text messages were to its case. In closing, the prosecutor talked about the text messages at length, including:

"Common sense, ladies and gentleman. He didn't know the marijuana was in his vehicle? Yet those messages are on his phone? One of the messages specifically names him. . . . And knowing that at that same time this defendant has this marijuana in his vehicle, what else could those text messages be but orders for drugs? Common sense.

". . . He's being charged with possession of it with the intent to. Those text messages show his knowledge and it shows his intent, the fact that he has those messages on his phone, one which names him specifically the day before he's caught with a half pound of marijuana in his car. Those messages show exactly what his intent and his knowledge was. He knew that he was possessing that marijuana, and he intended to sell it."

And the prosecutor stated again on rebuttal:

"It's even more unlucky that he let somebody borrow his phone. Didn't tell us who, but somebody borrowed his phone and somebody received text messages on his behalf that were related to drugs. Not just one, now that's unlucky, but two. Boy, that's winning the bad luck lottery. Not just having two text messages,

but one that specifically names him specifically, T-Ray. What's his excuse for that? Think about it."

Under these circumstances, in light of the entire record, the text messages were critical evidence used by the State to both undermine James' credibility and to demonstrate his knowledge and intent with respect to the drugs. The State has not met its burden to show beyond a reasonable doubt that the cell phone evidence did not affect the outcome of the trial. The violation of James' Fourth Amendment rights was not harmless in this instance and requires a reversal of his convictions. Given this conclusion, James' remaining arguments are moot and we need not consider them.

The decision of the Court of Appeals affirming the district court is reversed. The decision of the district court is reversed. The case is remanded to the district court.

✳ ✳ ✳

JOHNSON, J., concurring: I agree with the majority's determination that the Fourth Amendment to the United States Constitution prohibited the search of James' cell phone; that the constitutional violation was not harmless error; and that under *State v. Julian*, 300 Kan. 690, 333 P.3d 172 (2014), the search was not statutorily authorized. But I cannot accept the majority's rationale for overruling our prior decision in *Julian*, albeit the holding in that case may well have been the result of our choosing unwisely at the fork in the road created by *State v. Henning*, 289 Kan. 136, 209 P.3d 711 (2009). But having taken that pathway, we should either finish the journey or backtrack to the fork, rather than making a new road where one does not belong.

In describing the entire route to *Julian*, the majority accepts that the 2006 amendment to K.S.A. 22-2501(c) (Furse)—allowing a warrantless search incident to arrest for evidence of *any* crime—rendered that statutory provision more expansive than is permitted under the interpretation of the Fourth Amendment in *Arizona v. Gant*, 556 U.S. 332, 351, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). Accordingly, *Henning*'s determination that the statutory provision in subsection (c) of K.S.A. 22-2501 was unconstitutional on its face remains indisputably valid. And, "[w]here an act of the legislature

or a portion thereof is clearly unconstitutional, it is the duty of the courts to so declare and to hold the unconstitutional provision or provisions null and void." *State v. Cody*, 272 Kan. 564, 566, 35 P.3d 800 (2001).

Once this court exercises its duty to declare an unconstitutional statutory provision to be null and void, we must "determine next the proper remedy, *i.e.*, whether the [unconstitutional] provision is severable from the other statutory provisions." *Brennan v. Kansas Insurance Guaranty Ass'n*, 293 Kan. 446, 463, 264 P.3d 102 (2011). What might provide grist for the second-guessing mill in this case is our choosing to sever the null and void subsection (c), while retaining the remaining portions of the statute. We could have nullified the entire statute, even if it had contained a severability clause manifesting the legislature's intent to keep the balance of the act where some portion is declared unconstitutional. See *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 913, 179 P.3d 366 (2008) (decision to strike language not dependent upon presence of severance provision). The touchstone for severability is legislative intent, as we said over 50 years ago:

"Whether the court may sever an unconstitutional provision from a statute and leave the remainder in force and effect depends on the intent of the legislature. If from examination of a statute it can be said that the act would have been passed without the objectional portion and if the statute would operate effectively to carry out the intention of the legislature with such portion stricken, the remainder of the valid law will stand. Whether the legislature had provided for a severability clause is of no importance. This court will assume severability if the unconstitutional part can be severed without doing violence to legislative intent." *Felten Truck Line v. State Board of Tax Appeals*, 183 Kan. 287, 300, 327 P.2d 836 (1958).

Perhaps one could have viewed the legislature's actions in first attempting to abolish K.S.A. 22-2501 (Furse) before adopting the expansive 2006 amendment as suggesting a legislative preference for no statute over a judicially modified statute. Certainly in retrospect, the legislature's repeal of the entire remaining statute in 2011, after *Henning*'s severance of subsection (c), is indicative that the legislature would not have passed the statute without the objectionable portion, *i.e.*, that striking the subsection (c) language was contrary to legislative intent. In that instance, "courts must

nullify the statute," in lieu of severing the offending language. *State v. Limon*, 280 Kan. 275, 303, 122 P.3d 22 (2005).

Accordingly, if the majority had taken the straightforward tack of saying that *Henning* employed the incorrect remedy for the unconstitutionality of subsection (c) and that, instead of striking the offending language, *Henning* should have nullified the entire statute, I would not be writing separately. In that event, there would simply have been no greater statutory protection for James and this case would have been decided solely on a Fourth Amendment analysis.

But instead, the majority creates a hybrid remedy, whereby the unconstitutional language is stricken, in contravention of legislative intent, as evidenced by the majority's declaration that "[t]he legislature, in fact, intended to authorize searches incident to arrest for evidence of the crime." Slip op. at 12. But because the legislature did not intend to have K.S.A. 22-2501 without the provisions of subsection (c), the majority replaces that stricken provision with the caselaw governing searches incident to arrest for evidence of the crime under the Fourth Amendment. In other words, the majority does not strike the unconstitutional language; it replaces the unconstitutional language with its own constitutional language. Pointedly, the majority opinion cites to no authority for that counterfeit remedy.

In my view, and apparently in the view of our prior cases imposing the remedy of severance, the law that is effective after severing unconstitutional provisions from a statute is contained within the language of the remaining statute. In this case, that would mean that, after *Henning*, the Kansas law governing a search incident to arrest would have been as follows:

"When a lawful arrest is effected a law enforcement officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of

"(a) Protecting the officer from attack;

"(b) Preventing the person from escaping." K.S.A. 22-2501.

The " ' "basic purpose of [the Fourth] Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." ' " *State v. Smith*, 243 Kan.

715, 720, 763 P.2d 632 (1988) (quoting *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312, 98 S. Ct. 1816, 56 L. Ed. 2d 305 [1978]). Obviously, then, the State's ability to conduct warrantless searches of individuals is not a constitutional right under the Fourth Amendment. *Cf. State v. Bennington*, 293 Kan. 503, 507-08, 264 P.3d 440 (2011) (State has no constitutional right of confrontation). The majority apparently acknowledges that the Fourth Amendment protects individuals, not the State, because it states that the Kansas Legislature is permitted to enact a statute that "affords citizens of Kansas *greater* privacy protections against searches and seizures than the Fourth Amendment." Slip op. at 9.

Consequently, the legislature could have passed the statute recited above, without subsection (c), and that would have been the law in this State—no gaps or silence to fill; no constitutional concerns to address. The effect would have been to provide Kansas citizens with even more protections against searches and seizures than the prior statute, as well as more protections than the Fourth Amendment. Therefore, the majority's perceived need to "harmonize and give effect both to the constitutional limits on searches incident to arrest and to the permissible legislative intent behind K.S.A. 22-2501" is inscrutable to me. Slip op. at 12-13. The legislative intent was only an issue when the remedy of severance was imposed, and the resulting post-severance statutory limits on searches incident to arrest are already greater than the constitutional limits, so that giving effect to the constitutional limits adds nothing for the individual's protections.

One can understand the view that the result in *Julian* may be contrary to what the legislature would have wanted. But the majority's discomfort with the result is no excuse for crafting new law from whole cloth. Especially given that the legislature's repeal of K.S.A. 22-2501 makes *Julian* a case of last impression, I would simply follow the doctrine of stare decisis and resolve this case on statutory grounds.

BILES, J., joins in the foregoing concurring opinion.