NOT DESIGNATED FOR PUBLICATION

No. 116,136

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RICKY D. WRIGHT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Osage District Court; PHILLIP M FROMME, judge. Opinion filed August 18, 2017.
Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Brandon L. Jones*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., POWELL and GARDNER, JJ.

*Per Curiam*:  After a bench trial on stipulated facts, the district court found Ricky D. Wright guilty of two drug offenses. Wright now appeals his convictions on the grounds that the district court erred by denying his motion to suppress and by admitting the evidence derived from the search of his home after his adult son gave law enforcement consent to search it. Finding no error, we affirm the district court.

FACTUAL AND PROCEDURAL BACKGROUND

On February 8, 2015, Burlingame Police Officers Daniel Trechter and G.K. Morrison attempted to serve a municipal arrest warrant on Amanda Headlee. The address listed on the warrant was for a duplex that had a north and a south unit. Trechter testified he had conflicting information as to whether Headlee lived in the north or the south unit of the duplex. His information was that Headlee had previously resided in the north unit but that she now was living in the south unit.

The officers approached the door of the south unit and knocked. Wright's adult son, Caleb, who resided at the unit and was on the lease, answered the door. The officers asked if Headlee was there, and Caleb told them she was not present. Trechter then asked Caleb if he would allow the officers to come inside and check for themselves. According to Trechter, Caleb responded "yes" or "yeah." Caleb testified he did not consent; instead, he testified he told the officers to "hold on."

Trechter testified that Caleb appeared to be in his 20s (he was 24 at the time of this incident), did not appear to be under the influence of drugs or alcohol, and understood the questions the officers were asking because he answered them logically. Caleb did not appear to have any learning disabilities or mental impairments. Having received permission from Caleb, the officers entered the duplex through the front door to look for Headlee.

As Trechter entered the duplex, he observed a bag of leafy vegetation on the couch; this substance later tested positive for marijuana. Caleb attempted to sit down on the bag, but the officers requested he stand back up. At this time Wright walked from a bedroom into the front room where Caleb and the officers were located. Wright sat down in a recliner, but Trechter requested he stand back up and asked if he had any weapons on

him. Wright stated he had a pocketknife. Trechter then patted down Wright and found what he believed to be the pocketknife in Wright's rear left pocket.

Trechter removed the item and noticed it was not a pocketknife; rather, the item was a "black object that was kind of oblong with a magnet attached to it." Trechter handed the item to Morrison, who then "kind of tossed [the item] on the . . . arm of a couch." When the item was tossed, a lid popped off, and the officers observed a plastic bag inside the object. This bag contained a crystalline substance that Trechter believed— and was later confirmed—to be methamphetamine. Wright was then placed under arrest for possession of methamphetamine.

Wright was charged with possession of methamphetamine and possession of drug use paraphernalia. Wright filed a motion to suppress the evidence derived from the search, claiming an illegal entry and search of the residence. The district court held a hearing on Wright's motion, at which it stated that the question that needed to be answered was whether Caleb gave the officers permission to enter the duplex. The court concluded that "the evidence presented . . . shows clearly that he did," noting that Caleb was on the lease and had the right to grant permission to the officers to enter the duplex. The court's finding indicated that it credited Trechter's testimony over Caleb's. The court denied Wright's motion.

On March 7, 2016, by agreement of the parties, the district court conducted a bench trial on stipulated facts and found Wright guilty of possession of methamphetamine and possession of drug use paraphernalia. On April 18, 2016, the district court sentenced Wright to 15 months' imprisonment in the Kansas Department of Corrections and 6 months in the Osage County Jail, with the sentences to run concurrent. However, Wright was placed on probation from these sentences for 12 months.

Wright timely appeals the district court's refusal to suppress the evidence.

3

DID THE DISTRICT COURT ERR IN DENYING WRIGHT'S MOTION TO SUPPRESS?

On appeal, Wright argues the district court erred when it denied his motion to suppress the evidence derived from the search of his home. Specifically, he makes two arguments: (1) There was no probable cause to support the search, and (2) the consent, if given at all, was not voluntary.

Our standard of review of a district court's decision on a motion to suppress is a bifurcated one. We first review the district court's factual findings to determine whether they are supported by substantial competent evidence with the ultimate legal conclusion then reviewed using a de novo standard. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016). In reviewing the district court's factual findings, we do not reweigh the evidence or assess the credibility of witnesses. 304 Kan. at 274.

In his motion to suppress before the district court, Wright challenged whether consent to enter the premises was ever given and whether consent was voluntarily, intelligently, and knowingly given by Caleb. However, for the first time on appeal, Wright also argues there was no probable cause to support the search.

Issues not raised before the trial court cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). While there are exceptions to this requirement, an appellant must explain why an issue not raised below should be considered for the first time on appeal. See *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014); Supreme Court Rule 6.02(a)(5) (2017 Kan. S. Ct. R. 34). In *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014), our Supreme Court held that litigants who fail to comply with this rule "risk a ruling that an issue improperly briefed will be deemed waived or abandoned." Thereafter, our Supreme Court held that Rule 6.02(a)(5) would be strictly enforced. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015).

4

Because Wright's brief does not explain how any exception applies to allow us to consider his argument that law enforcement lacked probable cause to enter and search the duplex, we deem the issue waived and abandoned.

Second, Wright argues that the State failed to prove by a preponderance of the evidence that Caleb consented to the search of the residence. Specifically, Wright argues his son's mental impairment prevented him from voluntarily, intelligently, and knowingly giving consent to the search.

"The Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights assure each person's right to be secure in his or her person and property against unreasonable searches and seizures." *State v. Thompson*, 284 Kan. 763, 772, 166 P.3d 1015 (2007). Any warrantless search is per se unreasonable unless it falls within any of the exceptions to the search warrant requirement recognized in Kansas, one of which is consent to the search. *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014). "A valid consent requires two things: (1) There must be clear and positive testimony that consent was unequivocal, specific, and freely given and (2) the absence of duress or coercion, express or implied." *State v. James*, 301 Kan. 898, 909, 349 P.3d 457 (2015).

When denying Wright's motion to suppress the district court stated:

"I'm convinced, anyway, that the officer's testimony is credible, that there wasn't any hold on statement made, that [Caleb] said, hold on, let me get my dad, I'm not convinced the officers would have entered the premises.

. . . .

". . . I think the evidence is clear. He's [24] years old and he is on the lease and receives mail at the property and he has every bit of permission to consent who comes and goes in the house and he had permission to have authority to grant permission to

5

enter and I think that's what he did. And I'll deny the motion to suppress, indicate that their entry into the property was legal upon a consent given at the door by Caleb Wright."

Here, there is substantial competent evidence to support the district court's finding that Caleb's consent to the officers' entry was voluntarily, intelligently, and knowingly given. Trechter testified that Caleb consented to the officers' entry into the home. Although Caleb contradicted this finding, the district court judge made an explicit credibility finding, and we will not reweigh the evidence or reassess the credibility of the witnesses. See *Patterson*, 304 Kan. at 274. Caleb provided no testimony that he was compelled or coerced to consent to the search; he simply testified there never was consent. Nor was there any other testimony or evidence presented that Caleb's consent was not voluntarily, intelligently, and knowingly given.

Wright argues that because of his son's "cogitative ability" Caleb was unable to give consent. However, there was no direct evidence in the record of Wright's allegation of Caleb's low IQ making him mildly mentally retarded other than Wright's mere allegation contained in his motion to suppress. Caleb testified at the motion to suppress hearing that he had completed school up to the eleventh grade and had a learning disability that required his placement in the special education program at school. However, he also testified that he did "pretty good" in school and any problems he had there were "pretty much anything[] any other kid has." Further, Trechter testified Caleb appeared to understand the questions the officers were asking him at the door, that Caleb answered the questions logically, and that he did not appear to have any learning disabilities.

Based on this evidence, there was clear and positive testimony that consent was unequivocal, specific, and freely given and that the consent was given in the absence of duress or coercion. Substantial competent evidence supports the district court's finding

6

that Caleb's consent was valid. Therefore, the district court did not err in denying Wright's motion to suppress.

Affirmed.