IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 120,028

STATE OF KANSAS,
*Appellee*,

v.

JAMES L. THORNTON,
*Appellant.*

SYLLABUS BY THE COURT

An error admitting evidence obtained in violation of a defendant's Fourth Amendment rights is a constitutional error that can be declared harmless only when the party benefitting from the error proves beyond a reasonable doubt the error did not affect the trial's outcome in light of the entire record, i.e., when there is no reasonable possibility the error contributed to the verdict.

Review of the judgment of the Court of Appeals in an unpublished opinion filed May 15, 2020. Appeal from Douglas District Court; SALLY D. POKORNY, judge. Opinion filed March 5, 2021. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, was on the briefs for appellant.

*Kate Duncan Butler*, assistant district attorney, and *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: James L. Thornton seeks our review of a Court of Appeals decision affirming his convictions for possession of marijuana, methamphetamine, and drug

1

paraphernalia. Our concern is the prejudicial impact of the trial court admitting evidence that a syringe was found by police during a search that all agree violated Thornton's Fourth Amendment rights. The panel upheld the convictions. *State v. Thornton*, No. 120,028, 2020 WL 2503480, at *5 (Kan. App. 2020) (unpublished opinion). We affirm that result, even though the panel failed to consider whether this constitutional error was harmless. We hold the remaining evidence leaves no reasonable possibility the syringe affected the trial's outcome.

### FACTUAL AND PROCEDURAL BACKGROUND

Late one night, a Lawrence police officer saw Thornton ride away on a bicycle from a house "well known" for criminal behavior. The bicycle had no lights, which the officer believed was a city ordinance violation, so the officer activated his emergency lights and attempted a stop. But Thornton continued on for another block and a half with the officer twice trying to force him off the road. When the pursuit ended, the officer handcuffed Thornton, who carried a machete on his belt and wore a backpack. The officer removed the backpack, placed it on the patrol vehicle, and did a pat-down search.

After another officer arrived, the two did a "more thorough check" because Thornton was wearing multiple layers of clothing. Thornton told the officers he had a marijuana glass pipe on him, which they found. They also learned he had an active arrest warrant on a marijuana charge in Franklin County. They searched the backpack and found the syringe. It was photographed later and then disposed of according to standard practice.

After putting Thornton into a patrol car, an officer retraced the path Thornton had taken on the bicycle and found a plastic bag containing drugs. The State charged Thornton with possession of marijuana, methamphetamine, and drug paraphernalia.

2

Thornton moved to suppress the glass pipe, his statements to officers, and the bag of drugs.

At the suppression hearing, Thornton's counsel conceded the search that produced the pipe was "clearly" incident to arrest. He did not argue about the syringe and concluded his arguments by saying, "I guess the only issue that comes here would be [his] statement that he made to [the officer], and I ask that be suppressed." The district court ruled the statement was admissible and remarked it was "not even sure the [arrest] affidavit even mentions the syringe and the backpack, so I don't know where that even plays into this."

A jury convicted Thornton on all charges. The district court sentenced him to 18 months' imprisonment for methamphetamine possession and to concurrent terms of 6 months in jail for marijuana possession and 12 months in jail for paraphernalia possession.

Thornton appealed, raising two issues. First, he argued the backpack was illegally searched and this required his convictions be reversed. Failing that, he claimed the two drug possession convictions should be reversed because the prosecutor "repeatedly" linked the syringe's discovery with the circumstantial claim that the drugs found along Thornton's path belonged to him. Second, he argued the drug paraphernalia conviction should be reversed because the district court did not instruct the jury to agree unanimously whether the syringe or the pipe was the contraband on which its verdict should be based, noting the State did not elect which it relied on to support a conviction.

The State conceded on appeal the district court should have granted the suppression motion on the syringe, agreeing the search incident to arrest exception for a warrantless search did not apply to the backpack search that produced it. But the State

3

argued the bag of drugs was not discovered because of any information collected from the backpack, so the panel was "justified in not considering [Thornton's] reversibility argument."

The Court of Appeals affirmed. *Thornton*, 2020 WL 2503480, at *5, 7. The panel accepted the State's concession that the syringe's discovery was the product of an illegal search and that the district court erred admitting evidence of it. The panel also held the pipe was not tainted by an illegal search. 2020 WL 2503480, at *4-5. The panel then concluded:

> "Thornton also makes a cursory argument that reversal is necessary because the State 'repeatedly linked the discovery of the syringe with its circumstantial claim that the drugs found on the ground were [his].' But he cites no authority in support of this conclusory spillover effect argument. We deem it abandoned. See *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015) ('When a litigant fails to adequately brief an issue it is deemed abandoned.')." *Thornton*, 2020 WL 2503480, at *5.

Finally, the panel held it was unnecessary to instruct the jury to agree unanimously whether the pipe or syringe constituted the contraband underlying the drug paraphernalia conviction because simultaneously possessing the two items would constitute drug paraphernalia and would "not include multiple acts because they are not factually distinct . . . ." 2020 WL 2503480, at *7.

We granted Thornton's petition for review to consider whether the panel erred by affirming these convictions without determining if the syringe evidence was harmless beyond a reasonable doubt. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

ANALYSIS

When an appellate court concludes suppression should have been granted, it must "consider whether the error in admitting the evidence was harmless." *State v. Porting*, 281 Kan. 320, 328-29, 130 P.3d 1173 (2006) (holding error admitting evidence found in search of the defendants' residence in violation of their Fourth Amendment rights was not harmless, when the evidence obtained was the only evidence against the defendants). In Thornton's case, the panel reasoned suppression was required under a "judicially created . . . exclusionary rule." *Thornton*, 2020 WL 2503480, at *2; see also *State v. Daniel*, 291 Kan. 490, 496, 242 P.3d 1186 (2010) ("Th[e] exclusionary rule operates to protect Fourth Amendment rights through deterrence, and it is not the defendant's personal constitutional right.").

But an error admitting evidence obtained in violation of a defendant's Fourth Amendment rights is a constitutional error that "may only be declared harmless when the party benefitting from the error proves beyond a reasonable doubt that the error did not affect the outcome of the trial in light of the entire record." *State v. James*, 301 Kan. 898, 910, 349 P.3d 457 (2015) (holding reversibility for erroneous admission of evidence from defendant's cell phone in violation of the Fourth Amendment turned on the harmless-error test applicable to constitutional errors, not the more lenient test for non-constitutional errors). The so-called, *Chapman* formula for harmlessness of constitutional error requires reversal unless an appellate court is willing to declare it was harmless beyond a reasonable doubt. See *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) ("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."); *State v. Johnson*, 310 Kan. 835, 843, 450 P.3d 790 (2019) ("A constitutional error is harmless if the State can show 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where

there is no reasonable possibility that the error contributed to the verdict.'"); *State v. Ward*, 292 Kan. 541, 560-61, 256 P.3d 801 (2011) (noting *Chapman* places burden on beneficiary of constitutional error to prove harmlessness).

The panel affirmed Thornton's convictions without assessing the error's prejudicial impact despite concluding the district court erred in admitting evidence about the syringe. This was plainly wrong. Instead, the panel simply characterized Thornton's argument about the syringe's prejudicial effect as "cursory" and "conclusory." *Thornton*, 2020 WL 2503480, at *5. It referenced no harmless error caselaw and said nothing in its analysis to show it satisfied itself the error was harmless beyond a reasonable doubt. In other words, the panel missed a necessary step.

Thornton asks us to remand the case so the panel can perform the harmless error analysis. Alternatively, he asks us to do it and conclude the State failed to carry its burden to prove the trial error was harmless.

We have decided in this instance to address the question ourselves. We hold the remaining evidence was strong enough that there is no reasonable possibility the syringe evidence affected the jury's decisions to convict.

On the paraphernalia count, the State argued at trial that either the syringe or the glass pipe constituted drug paraphernalia. Yet an arresting officer admitted the syringe was dry, admitted he did not test it, and agreed it could have legitimate medical uses. These admissions dilute the officer's testimony that the syringe was consistent with others he had seen used for methamphetamine. Even so, the evidence about the syringe contrasts with the much stronger evidence connecting the glass pipe to Thornton's drug use and paraphernalia possession. As to that, the officer testified the pipe's purpose was for smoking marijuana and the bag with the pipe had an odor resembling burnt marijuana.

6

Adding to this, the discovery of the marijuana and methamphetamine along Thornton's path of travel during the bicycle pursuit reinforces the State's claim that both the pipe and syringe were drug paraphernalia Thornton "use[d] or possess[ed] with intent to use . . . to . . . inject . . . inhale or otherwise introduce a controlled substance into the human body." See K.S.A. 2019 Supp. 21-5709(b)(2) (defining crime of drug paraphernalia possession). We hold there is no reasonable possibility the syringe evidence's admission contributed to the paraphernalia conviction given the evidence about the glass pipe.

On the two drug possession counts, the State characterized the syringe at trial simply as circumstantial evidence linking Thornton to the bag of drugs found along his path before the stop. But that inference was overshadowed by the other evidence because Thornton's refusal to stop when the officer was in pursuit, the condition of the bag of drugs, and other admissible drug-related evidence in Thornton's possession strongly support an inferential link to him. After all, the ground was damp but the bag was dry, which suggests the bag was dropped very recently. And Thornton had on his person a pipe inside a bag that emitted a burnt marijuana odor. Based on the evidence, we hold there is no reasonable possibility the syringe evidence contributed to the jury's decision that the drugs found along Thornton's path belonged to him.

We affirm Thornton's convictions by applying the appropriate constitutional harmless error test. See *State v. Williams*, 311 Kan. 88, 91, 456 P.3d 540 (2020) (affirming Court of Appeals as right for the wrong reason).

Affirmed.