No. 118,905

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

LINDA FAYE RITCHEY,
*Appellee*.

SYLLABUS BY THE COURT

1.

The Fourth Amendment to the United States Constitution protects everyone's right to be secure in his or her person and not subject to unreasonable searches by the government.

2.

A warrantless search is unreasonable unless it falls within one of the recognized exceptions to the search-warrant requirement. The State has the burden to show that one of the exceptions applies.

3.

One search-warrant exception covers searches incident to arrest, in which an officer can search the person arrested and the area within that person's immediate control without a warrant. That exception does not apply to a purse left behind by the person who was arrested when the person arrested could no longer gain access to the purse and there's no possibility that the purse contained evidence of the crime for which the person was arrested.

4.

Another search-warrant exception is inevitable discovery, which allows the admission of evidence otherwise unconstitutionally obtained if police eventually would have found the evidence by lawful means. Here, the State claimed the purse would have been taken with the arrested person to the jail and then inventoried. But the State did not show that the exception applied because the evidence was found within a closed billfold within a closed purse, and the State neither presented evidence that the police department had a policy of taking purses to the jail for inventory purposes or any policy about the opening of closed items.

Appeal from Shawnee District Court; MARK S. BRAUN, judge. Opinion filed November 2, 2018. Affirmed.

*Rachel L. Pickering*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellant.

*Sonya L. Strickland*, of Kansas Appellate Defender Office, for appellee.

Before LEBEN, P.J., GREEN and MALONE, JJ.

LEBEN, J.:  Topeka police officers arrested Linda Ritchey for an outstanding warrant while she was sitting in the front passenger seat of a parked van. After Ritchey was arrested, a police officer searched Ritchey's purse, which Ritchey had left in the van, and found a baggie with methamphetamine residue. Ritchey moved to suppress the evidence from her purse, arguing that it had been found during an illegal search. The district court granted the motion.

The State appeals, arguing that the district court shouldn't have suppressed the evidence because: (1) officers legally searched Ritchey's purse during a valid search

incident to arrest, one of the recognized exceptions to the requirement that officers have a search warrant; and (2) even if the search were illegal, officers would have found the evidence when they processed Ritchey's purse at the police station to hold it in safekeeping for her. But the officers' search of Ritchey's purse wasn't a valid search incident to arrest because the purse wasn't on her person, there was no threat that Ritchey could use any weapons in her purse against the officers, and there was no possibility that her purse contained evidence of her crime of arrest—having an outstanding warrant. Likewise, there was no evidence that the police had a policy to take items like her purse into possession for safekeeping and no evidence that this purse was sent along with her to the jail, so the State failed to show that items within the closed purse would have inevitably been discovered. Because the officer searched Ritchey's purse without a warrant and the search didn't meet any of the exceptions for a warrantless search, the district court properly suppressed the evidence from the purse. We therefore affirm the district court's order granting the motion to suppress evidence.

FACTUAL AND PROCEDURAL BACKGROUND

In July 2017, Topeka police officers responded to a report that a group of women, including defendant Linda Ritchey, might be burglarizing a van in the Academy Sports parking lot. When officers arrived and found the van, they approached Ritchey, who was sitting in the front passenger seat of the van smoking a cigarette.

Officer Jake Cobler asked Ritchey if the van belonged to her. Ritchey said that it belonged to her friends, who were inside the store. Ritchey gave Cobler her identification, which was in the purse Ritchey was holding while sitting in the van. About six minutes later, a female officer, Officer Ramirez (whose first name is not in our record), asked Ritchey to step out of the van. When Ritchey stepped out, Ramirez put Ritchey in handcuffs, explaining that there was a warrant out for her arrest.

Once Ritchey was under arrest, Ramirez led Ritchey to the back of the van. Soon after, but while she was still standing at the back of the van, Cobler began searching through Ritchey's purse, which was still where she had left it on the front passenger seat. The baggie was in a pocket inside Ritchey's closed, fold-over wallet, which itself was inside the purse.

After Ritchey's arrest, the owner of the van showed up and officers determined there had been no burglary.

The State charged Ritchey with one count of possession of methamphetamine and one count of unlawful use of drug paraphernalia (the baggie). Ritchey pleaded not guilty to each count. Ritchey moved to suppress the evidence taken from her purse, claiming the State obtained its evidence through an illegal search because the officer's "search of [her] purse . . . d[id] not meet any of the exceptions to the search warrant requirement."

At an evidentiary hearing held to resolve Ritchey's motion, Cobler testified that he searched Ritchey's purse because he assumed officers would transport the purse to jail along with Ritchey. The State argued that Cobler legally searched Ritchey's purse as a search incident to a lawful arrest, a recognized exception to the search-warrant requirement. The State also argued that even if the search of Ritchey's purse were illegal, the baggie in it "would have been inevitably found" when officers searched Ritchey's purse at the jail.

Ritchey's attorney argued that the search of Ritchey's purse was illegal because "that purse was not within Ms. Ritchey's immediate control at the time of her arrest . . . ." Ritchey's attorney also argued that a "search incident to arrest is conducted for the purpose of protecting officers and safeguarding any evidence of the offense of arrest. And I don't think that the State has put forth any evidence to the Court that . . . would justify the search incident to arrest either."

4

The district court held that the search of Ritchey's purse was neither a search incident to arrest nor an inventory search:

"In this particular case, there is no discussion whatsoever by the officers among themselves . . . or with Ms. Ritchey about seeking permission to search the purse. . . . And the officer said he didn't talk with anybody, it was just his assumption that the purse would go with her because he believed it was her property. That may have been a valid assumption. . . .

". . . [T]here was discussion about search incident to arrest, which I do not think applies in this particular situation. Clearly, the purse was on the seat. The defendant was arrested. There is no testimony that the purse itself was seized. There is some discussion that it theoretically would have or should have gone with her because it was her property . . . . But there was no testimony that the officers did seize the purse and that it did go or should have gone to the jail, although there was some discussion as to what they usually do.

". . . I'm not sure that the inventory search fits in this particular case other than whether it would have been an inevitable discovery issue that once she got to the jail and may have had her purse with her, that the jail would have searched her purse and theoretically eventually found methamphetamine.

". . . It might have been Ms. Ritchey's decision to leave the purse on the car as she was arrested. Certainly as she walked away, she did not ask for her purse, did not request that her purse stay with her. The officers may have made the assumption but she was certainly not near her purse and she had already been arrested when Ms. Ritchey was escorted away. Again, there is no evidence that the purse was actually seized in this case. . . .

"So . . . I'm going to suppress the evidence. I believe the search of the purse was an illegal search in this particular case."

The State then appealed to our court.

5

ANALYSIS

The State challenges the district court's order granting Ritchey's motion to suppress any evidence taken from her purse. Even though that order is not a final judgment concluding the criminal case against Ritchey, the State is allowed to file an interlocutory appeal when the district court grants a defense motion to suppress evidence that's significant to the State's case. See K.S.A. 2017 Supp. 22-3603; *State v. Mburu*, 51 Kan. App. 2d 266, 270, 346 P.3d 1086 (2015).

We use a two-part standard when reviewing a district court's ruling on a motion to suppress evidence. First, we ask whether the district court's factual findings are supported by substantial evidence—that is, evidence that a reasonable person would find adequate to support a conclusion. Second, we review the district court's ultimate legal conclusions independently, without owing any required deference to the district court. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016).

There really aren't any factual disputes that have been set out in the parties' appellate briefs, so we can skip over the first part of that test. To the extent that any factual questions aren't fully answered by the district court's stated factual findings, we presume that the district court found all the facts required to support its ruling because the State (which lost in the district court) did not ask the district court to make additional findings. See *State v. Dern*, 303 Kan. 384, 394, 362 P.3d 566 (2015).

The State first argues that the district court erred in granting Ritchey's motion to suppress because the officer's search of Ritchey's purse was reasonable as a search incident to arrest.

The Fourth Amendment to the United States Constitution "protects everyone's right to be secure in his or her person and not subject to unreasonable searches by the

6

government." *State v. James*, 301 Kan. 898, 908, 349 P.3d 457 (2015). Any warrantless search is per se unreasonable unless it falls within one of the recognized exceptions to the search-warrant requirement. *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014). Those exceptions include consent, search incident to lawful arrest, stop and frisk, probable cause to search accompanied by exigent circumstances, emergency aid, inventory searches, plain view, and administrative searches of closely regulated businesses. 299 Kan. at 239.

The State carries the burden of proving one of the exceptions applies. *State v. Overman*, 301 Kan. 704, 710, 348 P.3d 516 (2015). If no exception applies, a judicially created remedy called the exclusionary rule usually prevents the State from using evidence obtained in an illegal search against the victim of the search. *State v. Pettay*, 299 Kan. 763, 768-69, 326 P.3d 1039 (2014) (citing *Illinois v. Krull,* 480 U.S. 340, 347, 107 S. Ct. 1160, 94 L. Ed. 2d 364 [1987]).

The State first suggests that, because Ritchey's purse was in her immediate possession at the time of her arrest, officers could search Ritchey's purse as a search incident to arrest. Under that exception, when an officer makes a lawful arrest, the officer can search the person arrested and the area within that person's immediate control without a warrant. *Chimel v. California*, 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969); *State v. Torres*, 53 Kan. App. 2d 258, 263, 386 P.3d 532 (2016). This warrant exception exists for two reasons: it protects officer safety by allowing police to search the area within the immediate control of the person arrested for weapons that the person could reasonably access and it prevents the person from destroying or concealing evidence within his or her reach. *Chimel*, 395 U.S. at 763. Neither of those reasons was served here.

At the preliminary hearing, Cobler said that he didn't search Ritchey's purse for his protection or to preserve evidence, but because he "just assumed that it was going with her" to jail. The officer's body-camera video shows that Ritchey placed her purse on the passenger seat of the van before she stepped out of the van and was arrested. Before

7

officers searched Ritchey's purse, Ramirez had arrested Ritchey, had placed her in handcuffs, and had led her from the front passenger side of the van toward the back of the van. By the time Cobler searched Ritchey's purse, there was no possibility that Ritchey could have accessed the purse or anything in it in an effort either to destroy evidence or resist the officers.

The purse had three compartments, and Cobler began going through them as soon as Ritchey was taken away. No compartment was zippered shut, but the officer had to open the enclosure to each compartment to look into it. Cobler had no inventory form and made no notes while he searched. Instead, he went through each compartment, apparently looking for contraband.

In the first compartment, he found a closed zippered black case attached to a keyring. He unzipped it but found nothing, zipped it up, and put it back. In the second compartment, he found her billfold (or pocketbook), which wasn't latched but was folded over so that it was closed. Cobler opened it and then went through each section of it, including a pocket that contained several items, including some cards, some paper, and the plastic baggie he took. Cobler spent about four minutes carefully going through the purse. After he had gone through the entire purse, he put it back on the seat and gave the plastic baggie to another officer.

As we've already noted, there couldn't have been a need to go through the bag for officer safety—Ritchey had already been handcuffed and led away. And since Ritchey was arrested for an outstanding warrant, not for committing a new crime, there was no reasonable possibility that Ritchey's purse contained evidence of the crime for which she was arrested that officers needed to preserve. See *Arizona v. Gant*, 556 U.S. 332, 343, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009) ("[I]n many cases, such as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence."); *State v. Reed*, No. 113,576, 2015 WL 9287062, at

8

*3 (Kan. App. 2015) (unpublished opinion) (finding that other than the arrestee's driver's license, the arrestee's wallet didn't contain evidence of the crime of arrest of driving with a suspended license). Indeed, the State has made no suggestion in the district court or here that the purse might have contained evidence related to the crime of arrest.

Even so, without addressing the purpose of Cobler's search of Ritchey's purse, the State still argues that officers were entitled to search Ritchey's purse because a purse is merely an extension of a person and officers may perform a full search of a person under arrest. See *United States v. Robinson*, 414 U.S. 218, 235, 94 S. Ct. 467, 37 L. Ed. 2d 427 (1973) (holding that "in the case of a lawful custodial arrest a full search of the person is . . . a 'reasonable' search under [the Fourth] Amendment"). In support, the State generally cites some out-of-state cases that have allowed the search of purses, handbags, or briefcases when a defendant had the item at or about the time of arrest. See *United States v. Johnson*, 846 F.2d 279, 282-84 (5th Cir. 1988) (holding that officers could search a briefcase within the defendant's reach when he was arrested); *United States v. Graham*, 638 F.2d 1111, 1113-14 (7th Cir. 1981) (holding that officers could search a shoulder bag defendant was wearing when arrested); *People v. Flores*, 100 Cal. App. 3d 221, 230, 160 Cal. Rptr. 839 (1979) (holding that officers could search a shoulder bag at defendant's feet when arrested); *People v. Cregan*, 2014 IL 113, 600, 10 N.E.3d 1196, 1202-03 (Ill. 2014) (holding that officers could search a wheeled suitcase and laundry bag in possession of train passenger when he departed the train and was arrested); *State v. Wynne*, 552 N.W.2d 218, 222-23 (Minn. 1996) (holding that officers could not search the purse of a woman who arrived home while officers were executing a search warrant for the premises; the purse was considered part of that woman's person and she wasn't named in the search warrant). But none of those cases are factually similar to ours, in which the defendant had left her purse behind and been taken away from the vicinity of the purse before an officer took possession of it.

The State also cites two Kansas cases, but again, neither has facts much like ours. The first one is *State v. Sabater*, 3 Kan. App. 2d 692, 694, 601 P.2d 11 (1979), in which this court upheld the search of an arrestee's pocketbook, finding that the "pocketbook was immediately associated with the person of defendant . . . ." But the facts in *Sabater* are limited, and there's no indication in the opinion about where the pocketbook was actually located in relation to Sabater's person when she was arrested. Without that information, there's no way to analogize that search to the search of Ritchey's purse.

The State also cites *State v. Dickerson*, No. 92,957, 2005 WL 3289390, at *4 (Kan. App. 2005) (unpublished opinion), which upheld the search of a purse incident to arrest. But there are two main differences between the facts in *Dickerson* and those here. First, Dickerson was arrested for possession of drugs, so the officer who searched her purse "could have been looking for illicit drugs and drug-related items . . . ." 2005 WL 3289390, at *4. Ritchey, on the other hand, was arrested for an outstanding warrant—a past crime for which officers couldn't reasonably expect to find evidence in her purse. Second, the officer in Dickerson searched the purse after "he saw the clear plastic bag of marijuana in the *opened* purse," thus invoking the plain-view exception to the warrant requirement. (Emphasis added.) 2005 WL 3289390, at *4 (citing *State v. Galloway*, 232 Kan. 87, 89, 652 P.2d 673 [1982]). But here, Ritchey's purse was closed when Cobler began to search it, so the plain-view exception would not apply.

In our case, the key point is that neither of the justifications for the search-incident-to-arrest exception to the warrant requirement was served when Cobler searched Ritchey's purse. Nor was the purse still on her person when she was arrested: Officer Ramirez asked her to step out of the van and then arrested Ritchey, who had left her purse behind. We conclude that the search-incident-to-arrest exception didn't apply here. See *Gant*, 556 U.S. at 339 ("If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply.").

10

Alternatively, the State argues the evidence from Ritchey's purse is admissible under the inevitable-discovery doctrine. The inevitable-discovery exception allows the admission of otherwise unconstitutionally obtained evidence if police eventually would have found that evidence by lawful means. *State v. Carr*, 54 Kan. App. 2d 780, 793, 406 P.3d 403 (2017) (citing *Utah v. Strieff*, 579 U.S. __, 136 S. Ct. 2056, 2061, 195 L. Ed. 2d 400 [2016]); see *State v. Baker*, 306 Kan. 585, 590-91, 395 P.3d 422 (2017). For the exception to apply, the State must prove that, more likely than not, the evidence would have inevitably been discovered later by lawful means. *Baker*, 306 Kan. at 591; see *State v. Lloyd*, 52 Kan. App. 2d 780, Syl. ¶ 2, 375 P.3d 1013 (2016).

The State says that officers would have found the evidence as part of an inventory search when they searched Ritchey's purse at the jail. That assumes, of course, that there was some sort of policy under which arresting officers took possession of the personal effects of a person who was arrested so that they could be returned to that person when he or she was later released. Ritchey counters that the inevitable-discovery doctrine doesn't apply because the State failed to produce any evidence that a valid inventory search took place. We agree with Ritchey.

In support of her argument, Ritchey cites our Supreme Court's decision in *Baker*, 306 Kan. 585. In it, the court held that the inevitable-discovery doctrine didn't apply when officers "testified that a small bag or backpack would have been 'searched' or 'inventoried' at the arresting agency or jail[, but] fail[ed] to present any evidence of standardized criteria or an established routine governing the opening of closed containers during inventory searches . . . ." 306 Kan. at 592-93. So in *Baker*, even though officers testified that they regularly took personal items like purses or small bags into their possession when arresting someone with such an item, the State had not established any standardized criteria for opening closed containers within the items. Thus, items that had been found by looking inside an Nintendo game case and a cell-phone carrier weren't properly subject to the inventory search.

11

The problem found in *Baker* is present in our case too. Even if we were to conclude that the State had presented evidence of a general policy of taking personal items like purses into law-enforcement possession for safekeeping when arresting the purse's owner, the State presented no evidence whatsoever of a Topeka Police Department policy about opening the purse or any containers found within the purse. And here, the contraband was found only after opening a closed purse, opening a closed billfold, and looking into a pocket within the billfold. *Baker* applies: "[P]roducing *no* evidence of a policy with respect to the opening of containers—as occurred here—does not pass constitutional muster." 306 Kan. at 594.

Additionally, there's no evidence here that the Topeka Police Department even had a general policy of taking things like purses into possession when arresting someone or of doing an inventory of items taken. When asked if it was "a policy of the Topeka Police Department that if someone is arrested out of a vehicle, that their purse . . . is going to go with them[,]" Cobler simply said, "It was sitting in her lap. It was her purse. I don't remember even asking anybody. I just assumed that it was going with her." At no point during the hearing did the State present any evidence that it was the Topeka Police Department's standard operating procedure to search all of an arrestee's personal belongings before transporting the arrestee to jail. Nor did the State present evidence that the purse was taken with Ritchey to the jail or that, if taken there, a policy was in place to search it there.

Officer Cobler's search certainly was not an inventory search; the video shows no attempt by Cobler to take an inventory of the purse's contents. Rather, he simply seems to be rummaging around looking for possible contraband. That's exactly what the Fourth Amendment prevents:

> "'Our view that standardized criteria . . . or established routine . . . must regulate the opening of containers found during inventory searches is based on the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. The policy or practice governing inventory searches should be

12

designed to produce an inventory. The individual police officer must not be allowed so much latitude that inventory searches are turned into "a purposeful and general means of discovering evidence of a crime."'" *Baker*, 306 Kan. at 593 (quoting *Florida v. Wells*, 495 U.S. 1, 4, 110 S. Ct. 1632, 109 L. Ed. 2d 1 [1990]).

The State still suggests that *Baker* doesn't control here because that case addressed a search of a closed container; the State argues that Ritchey's purse should be treated as an extension of Ritchey's person, not as a closed container. This argument isn't persuasive for the reasons we've already discussed—Ritchey wasn't in immediate control of her purse when Officer Ramirez arrested Ritchey or when Officer Cobler searched the purse. At least on the facts found here, we cannot treat the purse as if it were simply part of her person when Ritchey was arrested.

Our Supreme Court's rationale in *Baker* applies. The State failed to present evidence proving that Cobler's search of Ritchey's purse was standard protocol, that Cobler ever did an inventory of the purse's contents, or that the purse was taken into police possession to be returned to Ritchey when she was released from jail. On these facts, the inevitable-discovery exception does not apply.

Last, the State argues that the district court improperly suppressed the evidence in Ritchey's purse because suppressing the evidence didn't serve the purpose of the exclusionary rule. Our Supreme Court has explained that the purpose of the exclusionary rule "is to deter law enforcement and other government officials and agents from unreasonable intrusions upon the lives and property of citizens." *State v. Smith*, 243 Kan. 715, 724, 763 P.2d 632 (1988) (citing *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 [1961]); see *State v. Brittingham*, 296 Kan. 597, 605, 294 P.3d 263 (2013) (citing *Smith*). Ritchey doesn't address this argument on appeal, but we still do not find the State's argument persuasive.

13

The State claims "the rationale behind the exclusionary rule was not met [because Cobler] testified as to why he was allowed under [the Topeka Police Department's] policy to search [Ritchey's] purse [and] his actions were not illegal police conduct." The State provides no caselaw to support its position that a police officer's subjective belief about the legality of his or her actions is a deciding factor about whether the actions were, in fact, legal. See *State v. Murray*, 302 Kan. 478, 486, 353 P.3d 1158 (2015) ("The failure to support a point with authority amounts to an abandonment of the issue."). More importantly, *Baker* shows that the exclusionary rule has a real purpose here: having clear inventory-search policies in place prevents police from merely rummaging through personal possessions in search of evidence of other crimes. The exclusionary rule's application in cases like this encourages police departments to do so.

The district court correctly decided that Officer Cobler's search of Ritchey's purse was an illegal search under the Fourth Amendment. We therefore affirm the district court's grant of the defendant's motion to suppress evidence.