NOT DESIGNATED FOR PUBLICATION

No. 122,107

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

JAYNIE MAXINE BRAZDA,
*Appellee*.

MEMORANDUM OPINION

Appeal from Ellis District Court; BLAKE A. BITTEL, judge. Opinion filed July 10, 2020. Reversed and remanded with directions.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellant.

*J. Alex Herman*, of Herman Law Office, P.A., of Hays, for appellee.

Before WARNER, P.J., MALONE and BRUNS, JJ.

PER CURIAM: The State appeals from the district court's order suppressing evidence and dismissing the charges against Jaynie Maxine Brazda. The evidence that the district court suppressed was found in Brazda's purse following her arrest for theft from a Walmart store. Based on our review of the record on appeal, we conclude that the district court erred by applying the wrong legal standard in suppressing the evidence. As a result, we reverse the district court's order suppressing the evidence and dismissing the charges against Brazda. Moreover, we remand this action to the district court for further proceedings in order to apply the appropriate legal standard for a search incident to arrest.

1

On August 22, 2018, Officer Stephen Ligon of the Hays Police Department was dispatched to a theft in progress at a Walmart store. Once he arrived at the scene, Officer Ligon was told—presumedly by a Walmart employee—that two individuals stole items from the store and fled in a vehicle identified as a tan Buick. Shortly thereafter, Officer Ligon observed a tan Buick on the south side of the store with two occupants.

After stopping the vehicle, Officer Ligon determined that Timothy Zeman was the driver and that Brazda was sitting in the front passenger seat. The occupants were asked to step out of the vehicle and were patted down for weapons. An asset protection officer for Walmart approached and told Officer Ligon that three bottles of perfume and a Bluetooth keyboard had been taken.

With the door of the vehicle still open, Officer Ligon saw three perfume bottles lying on the passenger side floorboard where Brazda had been sitting. At that point, the officer placed Brazda in handcuffs and arrested her for theft. Corporal Phillip Gage—who was also at the scene—searched the Buick and found the Bluetooth keyboard under the seat where Brazda had been sitting.

After placing Brazda in his patrol vehicle, Officer Ligon returned to the Buick and searched the area where she had been seated. In doing so, he found a purse sitting on the passenger-side floorboard. In the purse, Officer Ligon found a small plastic baggie of crystal substance which he believed to be methamphetamine. The baggie was located inside an empty, clear Tic Tac container. Officer Ligon seized the Tic Tac container containing the baggie as evidence. Subsequently, he performed a field test and it revealed a presumptive positive for methamphetamine.

After Officer Ligon read Brazda her *Miranda* rights, he questioned her about the methamphetamine. She admitted that the purse was hers, and the officers took it into their possession as part of her personal belongings. Nevertheless, Brazda said the drugs belonged to Zeman. Specifically, she told Officer Ligon that Zeman threw the Tic Tac container to her and told her to hide it after they were stopped.

The State charged Brazda with possession of methamphetamine and possession of drug paraphernalia. Prior to trial, she filed a motion to suppress. In her motion, Brazda alleged that the officer's search of her purse was unreasonable, and she asked the district court to suppress any evidence seized as a result of the search.

On October 7, 2019, the district court held a hearing on the motion to suppress. Officer Ligon—who was the only witness at the hearing—testified that he searched the purse following Brazda's arrest "to check it for any stolen items, and that's when I located the small baggie." The prosecutor asked Officer Ligon if he was searching for stolen perfume bottles, and Officer Ligon responded, "Yes."

On cross-examination, Officer Ligon agreed that Brazda did not have the ability to access a weapon or to destroy evidence after she was arrested and placed in his patrol vehicle. He also acknowledged that all of the items that had been reported stolen had been found by the time he searched Brazda's purse. On redirect examination, Officer Ligon clarified that this was a "search incident to arrest" and "there was . . . a possibility there could have been things [in the purse] that they didn't see that could have been stolen." Moreover, the officer expressly testified that when he searched the purse, he was looking for stolen items.

Defense counsel argued that it was not reasonable for Officer Ligon to look inside the purse after all of the items reported to be stolen from Walmart had been recovered. In response, the State argued that this was a reasonable search of a vehicle incident to arrest

and that Officer Ligon could look for "evidence of the crime for which the defendant was arrested." In addition, the State briefly mentioned that the methamphetamine would have been inevitably discovered during an inventory search of the purse at the jail. Defense counsel objected to this argument on the basis that the State had not presented any evidence supporting this exception to the warrant requirement.

At the end of the hearing, the district court referred to the case of *State v. Ritchey*, 56 Kan. App. 2d 530, 432 P.3d 99 (2018), which it suggested may be "on point." Also, before taking the issue under advisement, the district court noted:

> "Obviously, the search of the car itself and what was found in the car was within the exceptions and proper. It's just extending that to a purse after the theft items were found that makes it tricky, and I want to make sure that I've—I want to look at that a little more closely so we can make—have the right result here."

The next day, the State filed a closing memorandum, asserting that *Ritchey* is distinguishable from this case. The State requested that the district court deny the motion to suppress, noting that "[t]his appears to be a classic case of an officer, who has probable cause of a crime having been committed, arresting the defendant for said crime, that finding evidence of said crime in the vehicle, continued to search the vehicle for additional evidence." In her response, Brazda argued that the officer did not have legal justification to search her purse after she had been secured in the patrol vehicle and all items reported stolen had been recovered from the vehicle.

On October 11, 2019, the district court issued a memorandum decision. Not only did the district court suppress the evidence, it also dismissed the case. In doing so, the district court found that because the items reported stolen had been found, "there was no probable cause to keep searching for other things." The district court also rejected the State's argument under the "inevitable discovery" doctrine because "[t]here was no

4

testimony about jail procedures or inventory searches . . . ." Thereafter, the State timely appealed.

ANALYSIS

Although the State divides its argument into two parts, the sole issue on appeal is whether the district court erred in granting the motion to suppress and dismissing the complaint. In support of its position, the State argues that the district court improperly applied a probable cause standard to a search incident to arrest. Moreover, the State argues that the district court erred in finding that Officer Ligon "clearly testified on direct that he had no reason to believe there were any other stolen items in the purse before he searched it." In response, Brazda contends that the district court properly granted her motion. Specifically, she argues that the State has failed to show that the officer was allowed to search her purse following her arrest.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. *State v. Doelz*, 309 Kan. 133, 140, 432 P.3d 669 (2019). Warrantless searches are per se unreasonable unless they fall within an exception to the warrant requirement. *State v. Hubbard*, 309 Kan. 22, 33, 430 P.3d 956 (2018). The State bears the burden to show that a challenged search or seizure was lawful. *State v. Parker*, 309 Kan. 1, 4, 430 P.3d 975 (2018). Here, the State relies on the search incident to arrest exception to the warrant requirement. See *Doelz*, 309 Kan. at 140. Although the State argued inevitable discovery below, it has not preserved this exception on appeal. Accordingly, we will address only the search incident to arrest exception in this opinion. See *State v. James*, 301 Kan. 898, 909, 349 P.3d 457 (2015).

In *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), the United States Supreme Court addressed the search incident to arrest exception in the context of the search of a vehicle. In *Gant*, the Supreme Court recognized that law

5

enforcement officers have the authority to conduct a warrantless search of an automobile incident to arrest in two specific circumstances: (1) when the arrestee is not secured and is within reaching distance of the passenger compartment of the vehicle at the time of the search; and (2) when it is reasonable to believe the evidence relevant to the crime of arrest might be found in the vehicle. 556 U.S. at 343 (quoting *Thornton v. United States*, 541 U.S. 615, 632, 124 S. Ct. 2127, 158 L. Ed. 2d 905 [2004]). Similarly, the Kansas Supreme Court has found that a search incident to a lawful arrest is justified when it is reasonable to believe evidence of the crime of arrest may be found in the vehicle. *State v. Torres*, 308 Kan. 476, 484, 421 P.3d 733 (2018) (citing *Gant*, 556 U.S. at 343-44).

Since Brazda was secured in the patrol vehicle at the time Officer Ligon found and searched her purse, only the second circumstance identified in *Gant* is relevant in this case. Here, the State maintains that it was reasonable for the officer to believe that evidence tied to the crime of arrest might be found in the vehicle. See 556 U.S. at 343. Of significance here, *Gant* requires only a reasonable suspicion—not probable cause—that evidence of the crime would be found in the vehicle following an arrest. 556 U.S. at 343-44. With probable cause already established for the arrest, the officer need only establish a reasonable suspicion that evidence of the crime will be found in the vehicle. *Torres*, 308 Kan. at 484.

The standard of review for a district court's decision on a motion to suppress has two components. First, we review the district court's factual findings to determine whether they are supported by substantial competent evidence. Second, we review the district court's ultimate legal conclusion under a de novo standard. In reviewing the factual findings, we do not reweigh the evidence or assess the credibility of witnesses. *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015). However, when the material facts supporting a district court's decision on a motion to suppress evidence are not in dispute, the ultimate question of whether to suppress is a question of law over which an

6

appellate court has unlimited review. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

The testimony offered by Officer Ligon at the suppression hearing is not in dispute. He testified that he found a purse on the floorboard near where Brazda had been sitting. He also testified that he did not believe the items reported stolen were in the purse. Rather, Officer Ligon testified that he searched Brazda's purse because he believed "there was also . . . a possibility there could have been things else that [the Walmart employees] didn't see that could have been stolen."

The State contends that the district court erred when it applied a probable cause standard rather than a reasonable suspicion standard in suppressing the evidence found in Brazda's purse. Based on our review of the record on appeal, we agree. After taking the issue under advisement and allowing the parties to brief the issue following the hearing, the district court issued a memorandum decision suppressing the evidence and dismissing the case. In doing so, the district court explicitly ruled that "there was no *probable cause* to keep searching for other things." (Emphasis added). Thus, we conclude that the district court applied the wrong legal standard. See *Gant*, 556 U.S. at 343-44, 347; see also *Torres*, 308 Kan. at 485-86.

We recognize that the district court did not have the benefit of seeing the United States Supreme Court's decision in *Kansas v. Glover*, ___ U. S.___, 140 S. Ct. 1183, 206 L. Ed. 2d 412 (2020), because it was not decided until several months after the suppression hearing. Nevertheless, we find that *Glover* provides guidance to courts in applying the reasonable suspicion standard in cases such as this one. Recognizing that sometimes the distinction between probable cause and reasonable suspicion is blurred, the Supreme Court clarified that "[t]he reasonable suspicion inquiry 'falls considerably short' of 51% accuracy, see *United States v. Arvizu*, 534 U.S. 266, 274, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002), for, as we have explained, '[t]o be reasonable is not to be

7

perfect,' *Heien v. North Carolina*, 574 U.S. 54, 60, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014)." *Glover*, 140 S. Ct. at 1188.

In explaining the test for reasonable suspicion, the *Glover* court held:

"Because it is a 'less demanding' standard, 'reasonble suspicion can be established with information that is different in quantity or content than that required to establish probable cause.' *Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990). The standard 'depends on the factual and practical considerations of everyday life on which *reasonable and prudent men*, not legal technicians, act.' *Navarette[,* 572 U.S.], at 402, 134 S. Ct. 1683 (quoting *Ornelas v. United States*, 517 U.S. 690, 695, 116 S. Ct. 1657, 134 L. Ed. 2d 911 [1996]). Courts 'cannot reasonably demand scientific certainty . . . where none exists.' *Illinois v. Wardlow*, 528 U.S. 119, 125, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000). Rather, they must permit officers to make 'commonsense judgments and inferences about human behavior.'; see also *Navarrette[,* 572 U. S.] at 403, 134 S. Ct. 1683 (noting that an officer '"need not rule out the possibility of innocent conduct"')." *Glover*, 140 S. Ct. at 1188.

We also note that the facts in *Ritchey*—which the district court relied upon in suppressing the evidence in this case—are distinguishable from the facts of this case. In *Ritchey*, the defendant was arrested for an outstanding warrant, and a search of her purse incident to arrest led to the discovery of methamphetamine. Unlike the present case, the officer in *Ritchey* did not express any belief that the purse contained evidence of the crime of arrest. 56 Kan. App. 2d at 537. Instead, the search was more akin to an inappropriate general "rummaging through" of personal belongings. 56 Kan. App. 2d at 541. Thus, in *Ritchey*, neither of the circumstances identified in *Gant* applied, and the evidence found in the purse was appropriately suppressed.

Finally, we conclude that the district court's finding in its memorandum decision that "the officer clearly testified on direct that he had no reason to believe there were any other stolen items in the purse before he searched it" is not supported by substantial

competent evidence in the record. Unlike the district court, we have the benefit of reviewing a transcript of the testimony of Officer Ligon at the hearing. A review of the transcript from the suppression hearing reveals that although Officer Ligon acknowledged that the three perfume bottles and the Bluetooth keyboard that had been reported stolen had already been recovered, he testified on direct that the reason he searched the purse was "to check it for any stolen items . . . ." Then, he clarified on redirect that this was "search incident to arrest" and he believed "there was . . . a possibility there could have been things [in the purse] that they didn't see that could have been stolen." In other words, the officer testified that he believed that there might be other items stolen that the Walmart employees did not see taken. Accordingly, we find nothing in the transcript that could be construed as a clear statement that the officer did not believe there might be stolen items in the purse.

In conclusion, we find that the district court applied the wrong legal standard in suppressing the evidence found in Brazda's purse after her arrest. Moreover, we find that the district court's finding "that the officer clearly testified on direct that he had no reason to believe there were any other stolen items in the purse before he searched it" was not supported by substantial competent evidence in the record. As a result, we reverse the order suppressing the evidence and dismissing the charges against Brazda. Furthermore, we remand this case to the district court to reconsider its previous ruling under a reasonable suspicion standard.

Reversed and remanded for further proceedings.

9