IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 113,165

STATE OF KANSAS,
*Appellee*,

v.

ROBERT WILLIAM DOELZ,
*Appellant.*

SYLLABUS BY THE COURT

1.

A police officer's warrantless search of an automobile is per se unreasonable under the Fourth Amendment to the United States Constitution and results in illegally obtained evidence unless the State can prove that the search fits within one of the recognized exceptions to the constitutional warrant requirement. Those recognized exceptions to the Fourth Amendment warrant requirement are: consent; search incident to a lawful arrest; stop and frisk; probable cause plus exigent circumstances; the emergency doctrine; inventory searches; plain view or feel; and administrative searches of closely regulated businesses.

2.

Under the plain-view doctrine, police may seize a plainly viewed object without a warrant if: (1) the police officer is lawfully at the location and position from which the object was plainly viewed; (2) the incriminating character of the object is immediately apparent from the police officer's plain-view observation; and (3) the police officer has a lawful right of access to the place and position at which the object may be seized.

1

3.

If a police officer lacks probable cause to believe that an object in plain view is contraband without conducting some further search of the object, i.e., if the object's incriminating character is not immediately apparent solely from the initial observation, the plain-view doctrine cannot justify the seizure of the object without a warrant.

4.

If a container conceals its contents from plain view, the plain-view exception to the warrant requirement of the Fourth Amendment to the United States Constitution cannot be applicable, standing alone, to permit the warrantless search of that container.

5.

A vehicle's mobility is considered an exigent circumstance for purposes of the probable-cause-with-exigent-circumstances exception to the warrant requirement of the Fourth Amendment to the United States Constitution, creating a subclass known as the automobile exception. The automobile exception provides that a warrant is not required to search a vehicle as long as probable cause exists to believe the vehicle contains contraband or evidence of a crime and the vehicle is readily mobile.

6.

The probable cause analysis under the automobile exception to the warrant requirement of the Fourth Amendment to the United States Constitution reviews the totality of the circumstances to determine whether it is fairly probable that the vehicle contains contraband or evidence.

Review of the judgment of the Court of Appeals in an unpublished opinion filed July 1, 2016. Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed January 11, 2019.

Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed and the case is remanded with directions.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, argued the cause, and *Peter Maharry*, of the same office, was on the briefs for appellant.

*Todd G. Thompson*, county attorney, argued the cause, and *Kathryn Devlin*, assistant county attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.:  A law enforcement officer stopped the vehicle Robert Doelz was driving to investigate whether it had any connection to a recent bank robbery. After seizing a digital scale from the backseat, the officer searched the vehicle, uncovering a large amount of methamphetamine in the vehicle's gas cap area. The district court denied a motion to suppress the fruits of the vehicle search, and an initial jury trial ended with a hung jury. The retrial jury convicted Doelz of possession of methamphetamine with intent to distribute; the district court denied Doelz' motion for a new trial based on newly discovered evidence; and the Court of Appeals affirmed the district court's denial of the suppression motion, the district court's denial of the new trial motion, and the jury's conviction. We granted Doelz' petition for review which claims *inter alia* that the Court of Appeals erred in affirming the district court's denial of the motion to suppress because the officer's general search of Doelz' vehicle was an unconstitutional warrantless search. We agree, reversing and remanding to the district court.

FACTUAL AND PROCEDURAL SUMMARY

On May 31, 2013, a credit union in Leavenworth, Kansas, was robbed. According to eyewitnesses, two black males committed the robbery, and they fled in a dark green Chevrolet Blazer driven by a white male. The witnesses said the getaway vehicle had

3

standard Missouri license plates with the final three characters being "GAY." But standard Missouri license plates use both letters and numbers.

The next morning, Leavenworth Police Officer Brandon Mance saw a dark green Chevrolet Blazer with standard Missouri license plates ending in "G4Y." The vehicle was parked at a residence Mance knew to be "involved with drug activity." As he drove past the parked Blazer, Mance noted that there were three white males inside the vehicle and a black male leaning against the outside of the Blazer, talking to the backseat passenger.

Mance waited until the vehicle left the residence, followed it, and subsequently initiated a traffic stop. Doelz was driving; Floyd Eaton was the front-seat passenger; and David Schmidt was seated in the backseat. None of the occupants was black. Mance asked if they had any knowledge about the robbery that occurred the night before, and they responded that they had read about it in the newspaper. Doelz told Mance that the Blazer belonged to his girlfriend's aunt. Mance recognized Eaton and Schmidt from prior encounters; Mance associated Eaton with a residence "notorious for the use of narcotics, primarily methamphetamines," and Eaton had previously admitted to using methamphetamine.

Mance ran all three occupants' names through dispatch and discovered that Schmidt had two outstanding arrest warrants with the City of Leavenworth. In the process of arresting Schmidt, Mance saw an object on the Blazer's backseat, 4 by 4 inches, black plastic, with a lid and a clasp, that he believed contained a digital scale. Without obtaining permission to enter the vehicle or to remove the object, Mance grabbed it, opened it, and confirmed that it was a digital scale.

Mance confronted Doelz with the scale, and Doelz denied that it belonged to him. Mance then requested permission to search the vehicle, but Doelz initially resisted the request. Mance told Doelz that, based on the evidence he had already found, the officer

was legally authorized to search the vehicle even without permission. At that point, Doelz responded, "If you have to, go ahead." The ensuing thorough search of the vehicle uncovered drugs, drug paraphernalia, and cash, including 28.52 grams of methamphetamine wedged in the vehicle's gas cap area.

The State charged Doelz with possession of methamphetamine with intent to distribute and, after a preliminary hearing and arraignment, the matter was set for a jury trial. The Friday before trial, Doelz filed a motion to suppress all of the evidence recovered in the vehicle. He first argued that the investigative detention should have terminated when Mance confirmed that the vehicle occupants were white, given that the credit union robbers were described as two black males. In addition, he asserted that Mance had unlawfully seized the digital scale without a warrant, and the ensuing vehicle search—based upon the scale and without a knowing consent—was an unlawful warrantless search.

At trial the next Monday, Doelz' counsel objected to officer Mance's testimony regarding the seized evidence and, in a sidebar, stated he wished to preserve his motion to suppress for appeal. The judge overruled the objection. The district court then took up the motion to suppress at the end of the day, following voir dire, opening statements, and the State's case-in-chief. Because the district court did not hold an evidentiary hearing, it is unclear whether the judge relied exclusively on testimony at the preliminary hearing, as Doelz had suggested, or whether the judge considered the additional testimony that had just been presented at trial.

Nevertheless, the court ruled that Mance had reasonable suspicion to make the traffic stop based on the description of the vehicle, and it was reasonable to extend the stop to obtain the identities of the vehicle occupants to investigate how this vehicle was involved with the robbery. Further, the court held that, when Mance saw the digital scale, his experience and training permitted him to opine that it was for an illegal use, thus

5

providing probable cause to seize the digital scale. The court found that Mance was authorized to search the entire vehicle on two bases: Doelz' consent and the state's theory that Mance had probable cause to believe the vehicle contained illegal contraband.

The trial resulted in a hung jury after one of the jurors refused to participate in deliberations. At the retrial, after empaneling the jury, the judge explained the restrictions placed on the jurors and gave the following instruction:

> "Any juror who violates these restrictions I've explained to you jeopardizes the fairness of these proceedings, and a mistrial could result, which would require the entire trial process to start over. As you can imagine, a mistrial is an expense and inconvenience to the parties, the Court, and the taxpayers."

During voir dire, the State informed the jury this was Doelz' second trial, stating:

> "You're going to hear that there was actually testimony from a previous trial in this case. And the reason for that . . . is because there was actually an issue with one of the jurors in that case. We had actually got to the very end of this case, and then one of the jurors decided she did not want to participate."

During trial, Doelz' counsel continually objected to the admission of the evidence of contraband recovered from Doelz' vehicle. The jury returned a verdict finding Doelz guilty of one count of possession of methamphetamine with intent to distribute.

After the jury returned a guilty verdict, Doelz filed a motion for a new trial based on newly discovered evidence. Following a hearing, the district court denied Doelz' motion for a new trial.

6

The Court of Appeals affirmed Doelz' conviction. As part of its opinion, the panel held that the totality of circumstances supported the officer's belief that the Blazer contained contraband. One of the circumstances specifically noted was "the presence of the closed digital scale recognized by the officer as drug paraphernalia used in drug sales." *State v. Doelz*, No. 113,165, 2016 WL 3570515, at *6 (Kan. App. 2016) (unpublished opinion). This court granted review of the Court of Appeals' decision.

LAWFULNESS OF VEHICLE SEARCH

Doelz argues Mance conducted an unconstitutional search of his vehicle in violation of the Fourth Amendment to the United States Constitution. He asserts Fourth Amendment violations occurred at multiple points during the investigation. First, Doelz concedes that the officer had reasonable suspicion to initially stop the vehicle based on the robbery eyewitnesses' description of the getaway vehicle, but he contends that the reasonable suspicion of bank robbery dissipated the moment the officer saw that all the vehicle occupants were white. At that point, Doelz argues, the detention could not be lawfully extended without reasonable suspicion of another crime, and Doelz should have been free to leave.

Next, Doelz argues the officer unlawfully seized the digital scale without a warrant and without a valid exception to the warrant requirement. Third, Doelz argues that Mance did not have probable cause, based on the totality of the circumstances, to search the entire vehicle. Finally, Doelz argued to the Court of Appeals that he did not freely and voluntarily consent to the search. We address each claim in turn.

*Standard of Review*

Reviewing a district court's decision on a motion to suppress requires the application of a bifurcated standard. The appellate court reviews the district court's

7

factual findings to determine whether they are supported by substantial competent evidence, and then the ultimate legal conclusion is reviewed using a de novo standard. In reviewing the factual findings, the appellate court does not reweigh the evidence or assess the credibility of witnesses. *State v. Garcia*, 297 Kan. 182, 186-87, 301 P.3d 658 (2013). "Substantial competent evidence is 'such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion.'" *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 514, 242 P.3d 1179 (2010) (quoting *Drach v. Bruce*, 281 Kan. 1058, Syl. ¶ 2, 136 P.3d 390 [2006]).

*Analysis*

*Extending the Detention*

Doelz contends that the lawful purpose of the initial vehicle stop was to determine whether the bank robbers were in the vehicle. Then, he reasons, because Mance knew the bank robbers were black, the lawful purpose of the stop was completed upon the officer's discovery that all of the vehicle occupants were white. The State counters that the eyewitnesses described the getaway driver as white, so the officer was justified in continuing to investigate whether Doelz, Eaton, or Schmidt was the accomplice driver.

"Investigatory detentions are generally permitted under the Fourth Amendment to the United States Constitution and K.S.A. 22-2402 if 'an objective officer would have a reasonable and articulable suspicion that the detainee committed, is about to commit, or is committing a crime.'" *State v. Thomas*, 291 Kan. 676, 687, 246 P.3d 678 (2011). What is reasonable is based on the "totality of the circumstances." 291 Kan. at 687. Reasonable suspicion, while more than a hunch, represents a "'minimum level of objective justification' which is 'considerably less than proof of wrongdoing by a preponderance of the evidence.'" 291 Kan. at 687-88. But investigatory detentions "'must be temporary and last no longer than is necessary to effectuate the purpose of the stop.'" *State v. Smith*, 286

Kan. 402, 410, 184 P.3d 890 (2008) (quoting *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 [1983]). Yet, when reasonable suspicion exists, taking a suspect's identification and using it to run a computer records check generally does not exceed the permissible boundaries of an investigatory detention. *State v. Walker*, 292 Kan. 1, 15-16, 251 P.3d 618 (2011) (case involving stop of pedestrian); see *United States v. Villagrana-Flores*, 467 F.3d 1269, 1275 (10th Cir. 2006) (summarizing U.S. Supreme Court cases holding that if an officer possesses reasonable suspicion to stop a vehicle, "'it is well established that [the] officer may ask a suspect to identify himself in the course of a *Terry* stop'").

Doelz' argument falters when it states the lawful purpose of the initial stop too narrowly. The officer had reasonable suspicion that the stopped vehicle had been involved in a bank robbery and that a white person had driven the car during the crime. Under the totality of circumstances, the lawful purpose of the stop was to ascertain whether the vehicle was, indeed, an instrumentality of the bank robbery crime and whether any of the occupants were an accomplice to the crime. Given that the purpose of the stop went beyond just looking for the two "inside" robbers, the discovery that the occupants were not the same race as the "inside" robbers did not complete the investigation that had justified the initial detention. In short, taking the occupants' identification and running a records check on them did not unlawfully extend the *Terry* stop.

*Seizing and searching the digital scale*

Doelz argues, alternatively, that even if the records check was not an unlawful extension of the investigatory detention, the officer did not have authority to enter the vehicle without a warrant and seize the object from the backseat. Then, having seized the object, the officer did not have the authority to conduct a warrantless search of the object to reveal the digital scale contained within. We agree.

9

"We pause to quickly review certain fundamental constitutional principles. We start with the premise that a warrantless search by a police officer is per se unreasonable under the Fourth Amendment unless the State can fit the search within one of the recognized exceptions to the warrant requirement. Those recognized exceptions are: 'consent; search incident to a lawful arrest; stop and frisk; probable cause plus exigent circumstances; the emergency doctrine; inventory searches; plain view or feel; and administrative searches of closely regulated businesses.' [Citation omitted.]" *State v Sanchez-Loredo*, 294 Kan. 50, 55, 272 P.3d 34 (2012).

The State does not assert that it had a warrant. "[T]he fact that the search was conducted without a warrant established it as per se unreasonable, *i.e.*, leading to illegally obtained evidence, unless the State carried its burden to establish a recognized exception to the warrant requirement." *State v. Overman*, 301 Kan. 704, 712, 348 P.3d 516 (2015). At the district court, the State relied on the "plain view" exception to the warrant requirement to justify both the officer's entry into the vehicle to seize the digital scale container and the officer's subsequent search of that container. The State's argument was that Mance saw the digital scale on the backseat as he was arresting Schmidt and knew that this type of scale is commonly used in the distribution of illegal drugs. That argument is flawed, both factually and legally.

Mance's ability to plainly see a box on the seat next to Schmidt as he exited the vehicle was insufficient, standing alone, to authorize the officer to enter the vehicle, seize the box, and search it under the recognized plain-view exception to the warrant requirement. Much more is constitutionally required, to-wit:

"'Under [the plain-view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. [Citations omitted.] If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object—i.e., if "its

10

incriminating character [is not] 'immediately apparent,'" [citation omitted]—the plain-view doctrine cannot justify its seizure. [Citation omitted.]' 508 U.S. at 375." *State v. Wonders*, 263 Kan. 582, 590, 952 P.2d 1351 (1998).

Doelz does not contend, and the record would not support a contention, that Mance was in an unlawful position when he viewed the scale box. We have affirmed the lawfulness of the records check of the vehicle occupants that led to the discovery of Schmidt's outstanding warrants. Consequently, it was legally appropriate for Mance to be at the door of the vehicle to effect Schmidt's arrest and to view the box on the backseat from that vantage point.

An officer's plainly viewing an item from a lawful observation position does not, however, grant the officer unfettered authority to retrieve the item. The officer must also "'have a lawful right of access to the object.'" 263 Kan. at 590. Once Mance removed Schmidt from the car, the officer had no more official business inside the Blazer. The officer admitted that his seizure of the box from the backseat was a nonconsensual search of the vehicle:

> "[Counsel:] Okay. And [the scale] was inside the vehicle?
>
> "[Mance:] That would be correct.
>
> "[Counsel:] So you had to search the vehicle in order to obtain the scale; is that correct?
>
> "[Mance:] I removed the scale from the vehicle. Yes, sir.
>
> "[Counsel:] And that would be considered a search, would it not?
>
> "[Mance:] I agree.

11

"[Counsel:] Did anyone give you permission to do that?

"[Mance:] Prior to removing the scale, no, sir."

Most importantly, the State did not establish that the incriminating character of the plainly viewed object on the backseat was immediately apparent to the officer. The State argued, and the district court accepted, that the incriminating character of the box on the backseat was immediately apparent to Mance because his training and experience informed him that digital scales are often used in the distribution of illegal drugs. But, a declaration that the officer knew that digital scales can, in some instances, meet the legal definition of illegal drug paraphernalia begs the question of whether Mance knew the box contained a digital scale immediately upon viewing the object, "'without conducting some further search of the object.'" 263 Kan. at 590. Although there was a reference at the mistrial to the box having a clear plastic lid, Mance's testimony at the preliminary hearing, under oath, unequivocally refuted that the object was immediately recognized as contraband:

"[Mance:] In the rear seat of the vehicle, I observed a black plastic case approximately 4 inch by 4 inch dimension, maybe an inch thick (indicating), sitting on the passenger seat. It had a clasp that allowed the lid to open.

"[State:] And were you able to tell what that was?

"[Mance:] *Not immediately*, but I had suspected it to be a digital scale." (Emphasis added.)

Then, on cross-examination, Mance confirmed that he did not know that the box on the backseat contained "[a] scale used to measure narcotics" until he opened the box.

12

In other words, Mance had to search the object that he had seized before he learned that the plainly viewed object contained a digital scale which could be used for, *inter alia*, illegal purposes. It was the search, then, that provided the probable cause that the plainly viewed object was contraband, negating the bona fides of the plain-view seizure. See 263 Kan. at 590 ("'If . . . the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object . . . the plain-view doctrine cannot justify its seizure.'").

But even if the officer's suspicions about the box on the backseat were to be viewed as sufficient to establish the right to seize the object, the plain-view exception, by its definition, did not permit the further search of the box without a warrant or another established exception. Recently, in the context of the search of a purse and billfold retrieved from an automobile, we instructed: "Where a container is involved, complying with the warrant requirement or one of its well-delineated exceptions is required because the Fourth Amendment provides protection to the owner of every container if the container conceals its contents from plain view." *State v. Evans*, 308 Kan. 1422, Syl. ¶ 4, 430 P.3d 1 (2018). Consequently, the search of the box retrieved from the vehicle's backseat was unlawful and the district court erred in refusing to suppress the evidence of the digital scale.

*Searching the entire vehicle*

The district court held that the thorough search of the entire vehicle was lawful based on (1) the probable-cause-plus-exigent-circumstances exception to the warrant requirement, and (2) Doelz' consent. Doelz appealed both of these points.

But in its brief to the Court of Appeals, the State did not provide any legal argument supporting application of the consent exception, simply stating: "Whether or not this Court finds defendant gave consent to search, the warrantless search was valid

13

based on the automobile exception." The panel, then, did not address whether Doelz provided a valid consent to the search. Moreover, the State did not cross-petition on the panel's failure to address the issue of consent and it did not file a supplemental brief to this court. Cf. *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015) (issue not briefed deemed waived and abandoned); *State v. Llamas*, 298 Kan. 246, 264, 311 P.3d 399 (2013) (point raised incidentally in a brief but not argued therein deemed abandoned). Nevertheless, it is dubious whether the response, "If you have to, go ahead," constitutes a freely given, knowing, and voluntary consent to search after the officer declares that he has the legal authority to search without the driver's consent. We move on to consider the alternative basis.

A vehicle's mobility is considered an exigent circumstance. Consequently, a subclass of the probable-cause-plus-exigent-circumstances exception is called the automobile exception. The automobile exception provides that a warrant is not required to search a vehicle as long as "probable cause exists to believe the vehicle contains contraband or evidence of a crime" and the vehicle is "readily mobile." *Sanchez-Loredo*, 294 Kan. 50, Syl. ¶ 4. The probable cause analysis reviews the totality of the circumstances to determine the probability that the vehicle contains contraband or evidence. 294 Kan. at 55.

Here, the panel found the totality of the circumstances supporting Mance's belief that the Blazer contained contraband included:

> "the presence of the closed digital scale recognized by the officer as drug paraphernalia used in drug sales; the officer's observation of the Blazer and its passenger speaking with a man at a known drug-complaint residence immediately before the stop; Doelz' statement that he had stayed at the house of a known drug dealer the night before the stop; and the officer's knowledge of a passenger's admitted use of methamphetamine." *Doelz*, 2016 WL 3570515, at *6.

14

We have determined above that evidence of the presence of the digital scale should have been suppressed. Without erroneously considering the alleged drug paraphernalia seized from the vehicle at the time of the stop, the other circumstances were insufficient to establish a fair probability that the vehicle contained contraband at the time it was searched.

The observed conversation between the vehicle occupants and a man at a "known drug-complaint residence" is nebulous. Were the drug complaints about that residence that people used drugs there or were they that people sold drugs there? If the former, it is not a fair probability that the drugs consumed at the house would be found in the vehicle when the users leave the residence. Moreover, a man conversing with one of the vehicle occupants means nothing without some information about the man and his connection to drug sales. Pointedly, the officer did not relate observing the normal indicia of a drug transaction, e.g., exchanging something through the car window during a short visit. Further, the prior confessions of past methamphetamine use by one of the passengers might further the officer's hunch that the passenger keeps the drug with him at all times, but it does not further the notion that the drug is probably contained within this car at this time. In short, the district court erred in finding the automobile exception to the warrant requirement applied in this case.

The Court of Appeals' decision to affirm the district court's denial of the motion to suppress the fruits of the unlawful searches is reversed. The matter is reversed for a new trial. Given this disposition, we need not consider whether the trial court's preliminary instruction was clearly erroneous or whether the district court erred in denying Doelz' motion for new trial.

Reversed and remanded.