NOT DESIGNATED FOR PUBLICATION

No. 120,426

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS
*Appellee,*

v.

SARAH ZOE JAILLITE,
*Appellant.*


MEMORANDUM OPINION

Appeal from Douglas District Court; JAMES R. MCCABRIA, judge. Opinion filed April 3, 2020. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BRUNS, P.J., MALONE and GARDNER, JJ.


PER CURIAM:  Sarah Zoe Jaillite appeals her convictions of various drug-related crimes following a bench trial on stipulated facts. Jaillite claims the district court erred by denying her motion to suppress evidence found during a warrantless search of her car. More specifically, she argues that the police illegally searched her car because they lacked probable cause to believe there was evidence of illegal activity inside the car. We disagree with Jaillite's claim and affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On the morning of June 27, 2017, Officers Kristen Kennedy and Reid Walter of the Lawrence Police Department's Drug Enforcement Unit (DEU) were in separate vehicles conducting surveillance on Jaillite, who they believed was involved in selling methamphetamine and K2. Walter saw Jaillite leave a house in Lawrence and drive away in a white Lincoln. He and Kennedy followed her to Eudora, where she went into a house and remained there for about 10 minutes, then they followed her back to Lawrence, where she entered another house and remained there for about 5 minutes. Jaillite then drove to another house in Lawrence that Walter knew as a location "involving drugs and other calls for police assistance." Kennedy described this house as "a known drug residence." The resident of that house came out and got into Jaillite's car and remained there for about 10 minutes. Kennedy later testified that in her training and experience, such short stops are often linked to drug activity.

Around the time that Jaillite drove away from the third house, Walter, who knew that there were marked police vehicles in the area, spoke with Sergeant Rob Murry and requested that a uniformed officer in a marked car stop Jaillite. Walter requested the stop based on Jaillite's three short stops, his knowledge of Jaillite's prior involvement with drug use and sales, his belief that the license plate on Jaillite's vehicle was obscured, his suspicion that it was altered, and his belief that Jaillite "had driver's license infractions that may prevent her from driving."

At around 11 a.m., Officer Kenneth Rodgers, who was in the area in a marked police vehicle, received a phone call asking him to stop Jaillite's vehicle. Rodgers recognized Jaillite's name "[f]rom previous investigations regarding drug activity." He ran Jaillite's name through his in-car computer and discovered that her driver's license was suspended. When Jaillite drove past Rodgers, she made eye contact with him and he

2

initiated a traffic stop. Jaillite did not immediately pull over; she proceeded about a block to a parking lot before stopping.

When Rodgers began talking with Jaillite, he noticed that she was sweating, her hands were shaking, and she was short of breath. Jaillite said she was heading home, but Rodgers noted that she was driving away from that location. Jaillite also told Rodgers that she was leaving a friend's house and that she had not stopped anywhere else, but Rodgers knew from the DEU surveillance information that was not true.

Rodgers returned to his car to conduct a check for outstanding warrants and, from his car, he saw Murry, who had arrived at the scene as backup, run to the driver's side of Jaillite's car. Murry had been standing on the passenger's side of Jaillite's car and as he looked through the window, he saw Jaillite open a pill bottle. Rodgers later testified that he believed Murry saw Jaillite swallow some pills and that Murry took a small pill bottle from Jaillite. Rodgers arrested Jaillite for driving on a suspended license. Another officer took Jaillite to the Douglas County Jail.

Kennedy arrived at the scene of the traffic stop and Rodgers told her that Murry "had located a pill bottle with a controlled substance in it" on Jaillite. Based on information from another DEU member that Jaillite had been involved in prior distribution of methamphetamine, her own surveillance of Jaillite that day, and the information from Rodgers that Murry had found oxycodone on Jaillite's person, Kennedy believed she had probable cause to search Jaillite's vehicle without a warrant. While searching Jaillite's vehicle, Rodgers and Kennedy found three cell phones, a laptop, a pipe, and a plastic Ziplock bag with some residue in it. Kennedy reviewed the information on the cell phones and discovered multiple conversations about buying, selling, and distributing pills and methamphetamine. Meanwhile, at the jail, a baggie of methamphetamine fell from Jaillite's legs as she was approaching the booking desk. Jaillite later spoke with Walter and confessed to buying and selling methamphetamine.

3

On June 28, 2017, the State charged Jaillite with one count each of possession of methamphetamine with intent to distribute, a severity level 2 drug felony; possession of amphetamine, a severity level 5 drug felony; possession of oxycodone, a severity level 5 drug felony; possession of drug paraphernalia, a class A nonperson misdemeanor; driving while suspended, a class A nonperson misdemeanor; no proof of insurance, a class B nonperson misdemeanor; and expired or illegal vehicle registration, an unclassified misdemeanor. Jaillite pled not guilty to all charges.

On December 15, 2017, Jaillite moved to suppress, arguing that the stop and search of her vehicle violated her rights under the Fourth Amendment. The State responded in opposition, arguing that there was reasonable suspicion to stop Jaillite's vehicle and there was probable cause to conduct the search. The district court held a hearing on the motion to suppress on February 23, 2018, at which Rodgers and Kennedy testified as related above. Because of time constraints, the district court continued the matter for argument. On February 26, 2018, the district judge heard argument on the motion and ultimately denied it:

"Well, there is no question that there was a basis for the stop here. Officer Rodgers' testimony was he was acquainted with Ms. Jaillite, confirmed that she was driving while suspended. There was a basis for the stop. From there, it's a pretty straight line event [*sic*] with respect to her transport to the jail, and I don't remember the particulars of the testimony, but while at the jail contraband is observed falling from somewhere on or about the person of Ms. Jaillite that tested positive, and there we are. With respect to, then, the basis for the search of the car at the scene, I think when you are a trained law enforcement officer, and you see somebody short-stopping at a series of houses, one of which is a known drug house, we've gotten pretty close to probable cause to believe that if you stop that car you're going to find, search that car, you're going to find evidence of criminal activity probably related to the sale of illicit substances.

". . . Ms. Jaillite is observed by Officer Rodgers to have these indicators of high anxiety, and by themselves I'm not gonna [*sic*] say they would never provide probable cause, but what they do provide to a law enforcement officer is a basis to have heightened

4

senses to whatever else is gonna [*sic*] happen at that scene. And we had somebody observe Ms. Jaillite attempt to start swallowing a bunch of pills, and the bottle was taken. And I am satisfied, from the evidence, that before the search of that vehicle occurred somebody determined that those, there were contraband pills in that container. And in combination with all of the other circumstances, and the fact that it's an operable vehicle provided probable cause along with exigent circumstances to excuse the requirement for a warrant.

"Now, I don't have a perfect picture of how that went down. But I have enough of a picture to believe that it was a little bit of an exigent circumstance all by itself, once somebody saw pills being swallowed, and the fact that the officers don't recall exactly who made that determination of what pills were there. In light of all the other testimony and circumstances, I am satisfied that a determination was made to include that in the decision to search, and for that reason the motion to suppress is denied."

Jaillite waived her right to a jury trial and proceeded with a bench trial on stipulated facts on May 14, 2018. The stipulated facts are not included in the record. The district court found Jaillite guilty on all counts. On July 11, 2018, it sentenced Jaillite to a controlling sentence of 105 months' imprisonment. Jaillite timely appealed.

ANALYSIS

On appeal, Jaillite claims the district court erred by denying her motion to suppress evidence found during the warrantless search of her car. More specifically, she argues that the police illegally searched her car because they lacked probable cause to believe there was evidence of illegal activity inside the car. The State argues that the search of Jaillite's car was supported by probable cause.

"Reviewing a district court's decision on a motion to suppress requires the application of a bifurcated standard. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence, and then the ultimate legal conclusion is reviewed using a de novo standard. In reviewing the factual findings, the appellate court does not reweigh the evidence or assess

5

the credibility of witnesses. [Citation omitted.]" *State v. Doelz*, 309 Kan. 133, 138, 432 P.3d 669 (2019).

Jaillite argues that the district court erred by finding that the police had probable cause to believe that the car contained evidence of a crime and by finding that there were exigent circumstances to search. She acknowledges that a vehicle's mobility provides the exigent circumstances required for a warrantless vehicle search to comply with the United States Constitution, but she contends that the Kansas Constitution provides broader protections and requires more. Finally, she argues that admission of the evidence prejudiced her, so any error was not harmless.

"'[A] warrantless search by a police officer is per se unreasonable under the Fourth Amendment unless the State can fit the search within one of the recognized exceptions to the warrant requirement. Those recognized exceptions are: 'consent; search incident to a lawful arrest; stop and frisk; probable cause plus exigent circumstances; the emergency doctrine; inventory searches; plain view or feel; and administrative searches of closely regulated businesses.'" [Citations omitted.]" *Doelz*, 309 Kan. at 140.

"A vehicle's mobility is considered an exigent circumstance. Consequently, a subclass of the probable-cause-plus-exigent circumstances exception is called the automobile exception. The automobile exception provides that a warrant is not required to search a vehicle as long as 'probable cause exists to believe the vehicle contains contraband or evidence of a crime' and the vehicle is 'readily mobile.' The probable cause analysis reviews the totality of the circumstances to determine the probability that the vehicle contains contraband or evidence. [Citations omitted.]" 309 Kan. at 143.

As stated above, Jaillite challenges the district court's ruling that the automobile exception applied to allow the warrantless search of her vehicle. For the automobile exception to apply, (1) the officers must have had probable cause to believe that Jaillite's vehicle contained contraband or evidence of a crime and (2) exigent circumstances must have been present. See 309 Kan. at 143.

Beginning with the second prong, the Kansas Supreme Court has held that if a vehicle is "readily mobile," the exigency requirement is satisfied. 309 Kan. at 143. Even so, Jaillite argues that the Kansas Constitution requires more than mobility to establish the exigent circumstances needed to justify a warrantless vehicle search. But as the State argues, Jaillite did not raise this argument in the district court. Jaillite did not file a reply brief or otherwise respond to the State's preservation argument.

> "'Generally, parties may not raise constitutional issues for the first time on appeal unless they successfully argue that one of three recognized exceptions applies.' Based on this principle, [Supreme Court] Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 35) requires an appellant's brief . . . to include a 'pinpoint reference to the location in the record where the issue was raised and rule on. If the issue was not raised below, there must be an explanation why the issue is properly before the court.' . . . Litigants who ignore this rule risk a ruling that the issue has been waived or abandoned. [Citations omitted.]" *State v. Sanders*, 310 Kan. 279, 303, 445 P.3d 1144 (2019).

Jaillite neither acknowledges that she did not make any Kansas Constitution-based argument in the district court nor argues why this court should consider her argument for the first time on appeal. By these failures, she has waived and abandoned her argument challenging the existence of exigent circumstances as needed to apply the automobile exception to the general warrant requirement. Thus, the only issue properly before this court is whether there was probable cause to search Jaillite's vehicle.

"Probable cause to search a vehicle exists when the totality of the circumstances indicates there is a fair probability that the vehicle contains contraband or other evidence of a crime." *State v. Howard*, 305 Kan. 984, 990, 389 P.3d 1280 (2017). Jaillite acknowledges that when the police searched her vehicle, they knew (1) the DEU had requested that Jaillite be stopped; (2) Jaillite was driving on a suspended license; (3) she had a pill bottle; (4) she had driven to three houses that morning, including a "known drug house"; and (5) she stopped for 5 to 10 minutes at each house. But Jaillite argues

that at the time of the search, the officers did not know why she had visited any of the houses, what she had done there, or what was in the pill bottle. She maintains that there was not probable cause to search her vehicle.

First, this court may disregard Jaillite's assertion that law enforcement had not yet identified the contents of the pill bottle when they decided to search her vehicle. The district court made the factual findings that "somebody observe[d] Ms. Jaillite attempt to start swallowing a bunch of pills" and "before the search of that vehicle occurred somebody determined that those, there were contraband pills in that container." Jaillite makes clear in her appellate brief that "there are no disputed facts" in this appeal.

Second, as the State points out, the police had additional information that affects the probable cause analysis. On top of knowing that Jaillite had made three short stops that day, Kennedy knew that the short stops often suggest drug activity. Walter and Kennedy both recognized Jaillite's final stop as a residence at which drug activity had occurred. Walter knew that Jaillite previously was involved in drug use and sales and Rodgers recognized Jaillite from prior drug investigations. Jaillite did not tell Rodgers the truth about her activity before the stop. She was sweating, her hands were shaking, and she was short of breath. And police observed Jaillite, who was in her car at the time, ingesting controlled substances during the stop.

Third, Jaillite's attempt to analogize her circumstances to those present in *State v. Ibarra*, 282 Kan. 530, 147 P.3d 842 (2006), is unpersuasive. In *Ibarra*, the Kansas Supreme Court held that the odor of ether "is as consistent with lawful activity as it is with criminal activity" and, thus, "the smell of ether alone is justification for further investigation but not for a search." 282 Kan. at 543. In contrast, the probable cause to search Jaillite's vehicle was not based on a single circumstance or odor. And contrary to Jaillite's assertion that police "only had an uncorroborated hunch [that she] was involved in drug transactions," police saw Jaillite ingest contraband during the stop that preceded

the search. *Ibarra* is materially distinguishable and does not cast doubt upon the district court's decision here.

In sum, "[t]he probable cause analysis reviews the totality of the circumstances to determine the probability that the vehicle contains contraband or evidence." *Doelz*, 309 Kan. at 143. Under the totality of the circumstances here, there was a "fair probability" that Jaillite's vehicle contained contraband or evidence of a crime. See *Howard*, 305 Kan. at 990 (setting forth the "fair probability" standard). Thus, we conclude the district court did not err in finding that there was probable cause to search Jaillite's vehicle.

Affirmed.