NOT DESIGNATED FOR PUBLICATION

No. 120,205

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

FRANK JAMES BURNETT,
*Appellee*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed May 15, 2020.
Affirmed.

*Natasha Esau*, assistant district attorney, *Keith Schroeder*, district attorney, and *Derek Schmidt*,
attorney general, for appellant.

*Regina M. Probst*, of Probst Legal Services, of Hutchinson, for appellee.

Before SCHROEDER, P.J., BUSER and ATCHESON, JJ.

BUSER, J.:  This is the State's interlocutory appeal of the district court's order
granting Frank James Burnett's motion to suppress evidence. The State contends the
search of Burnett's motor vehicle was supported by probable cause. Upon our review, we
conclude that the totality of circumstances did not indicate a fair probability that the
vehicle contained evidence of illegal drug activity. Accordingly, we hold the district court
did not err in its suppression order. We affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

On July 25, 2017, Detective Corey Graber, of the Reno County Sheriff's Department drug unit, was conducting surveillance on locations of suspected drug activity. He observed Burnett park his truck in front of a residence that he was surveilling. Detective Graber suspected that marijuana, methamphetamine, and cocaine were being sold and distributed from the residence because law enforcement had previously conducted controlled buys at that location. Additionally, the detective knew from prior contact with Burnett that he used illegal drugs.

Detective Graber observed Burnett go into the residence with a black satchel and, about 15 to 20 minutes later, Burnett returned to the truck still carrying the satchel. Another man, Bobby Fisher, entered Burnett's truck and they drove away.

Believing that Burnett's driver's license was suspended, Detective Graber contacted Officer Jonathan Suda of the Hutchinson Police Department to initiate a traffic stop on Burnett's truck. Before Officer Suda stopped the truck, he confirmed that Burnett had a suspended driver's license. When the vehicles stopped, Fisher ran from the passenger's side of the truck.

Detective Graber, who was a short distance from the vehicle stop, followed Fisher, who ran into a building. The detective went inside the building, and discovered Fisher hiding under a desk. In a trash can next to the desk, Detective Graber found a hat that he believed belonged to Fisher and a syringe with residue in it. A baggie in Fisher's pocket had similar residue, which Detective Graber believed was methamphetamine. Detective Graber did not perform any field tests on the residue to confirm his suspicion, explaining that he preferred to save the material for the forensic laboratory to test.

2

Detective Graber arrested Fisher and then returned to the traffic stop, where he searched Burnett's truck. He later testified that he conducted the search "[b]ecause Mr. Fisher ran from the vehicle, had meth[amphetamine] on his person, and tried to hide meth[amphetamine] at the place where I found him." The detective also testified that Burnett had admitted being "a user" during previous conversations they had, Detective Graber knew that controlled purchases of drugs had been made at the residence where he had seen Burnett, and that Burnett had "made a short term stop at another residence that we were doing surveillance on and actively working for the distribution of methamphetamine."

Based on the evidence seized in the search of the truck, the State charged Burnett with possession of methamphetamine, possession of drug paraphernalia with intent to distribute a controlled substance, criminal possession of a weapon by a felon, possession of drug paraphernalia, and driving while suspended. The State later dismissed the charge of criminal possession of a weapon by a felon. Although the district court appointed counsel to represent Burnett, he eventually invoked his constitutional right to represent himself.

On October 5, 2018, Burnett filed a pro se motion to suppress evidence, arguing among other things that the search of his truck was illegal because it was not based on probable cause. A hearing was held on October 18, 2018, at which time Burnett appeared pro se and Detective Graber and Officer Suda testified as summarized earlier. The State argued that the detective "had probable cause to believe that there was a probability, high probability that there could be evidence of the crime of possession of drugs or possession of drug paraphernalia in the car, plus exigent circumstances in the form of the truck that could leave."

3

The district judge disagreed, holding:

"The fact that [Burnett] picked up someone and that person ran and had drugs on him and the drugs found in the insurance office, to me, don't add to the probable cause to search Mr. Burnett's property in the truck. Someone gives someone a ride you're not responsible for what the person has on their property.

"Therefore I, I just don't see how, what happened with Mr. Fisher adds to the probable cause in regards to looking in the [satchel] that we know the passenger had nothing to do with. That Mr. Burnett was seen carrying into a house and carrying back out of the house.

"So the question is, by virtue of the fact I've heard testimony that the officers believed Mr. Burnett had some contact with methamphetamine prior, he was seen going into a house in which meth[], they suspected methamphetamine, does that establish probable cause to search the vehicle he was driving including a satchel he had been seen carrying.

. . . .

". . . [J]ust by virtue of the fact that somebody runs from a vehicle that has apparently personal use methamphetamine on them, that they just got picked up and given a ride in a vehicle doesn't go to establish probable cause on the driver of the truck. And the only thing we have against you is, is they suspect you've had a methamphetamine [*sic*] and they saw you at a methamphetamine house. What they suspected to be a methamphetamine house.

. . . .

". . . I do not think there was probable cause to search your vehicle and the motion to suppress is granted . . . on the sole issue of probable cause.

The district court granted Burnett's motion to suppress evidence and the State appeals.

ANALYSIS

"'[A]warrantless search by a police officer is per se unreasonable under the Fourth Amendment unless the State can fit the search within one of the recognized exceptions to

4

the warrant requirement.'" *State v. Doelz*, 309 Kan. 133, 140, 432 P.3d 669 (2019). "The State bears the burden to establish a challenged search or seizure was lawful. [Citation omitted.]" *State v. Parker*, 309 Kan. 1, 4, 430 P.3d 975 (2018).

On appeal, the State justifies the search of Burnett's truck under the probable cause plus exigent circumstances exception to the search warrant requirement. See *Doelz*, 309 Kan. at 140 (noting this as one of the recognized exceptions to the warrant requirement). Because the State asserts no other exceptions to the warrant requirement, we will not consider any other exceptions regardless of their potential applicability. Cf. *State v. James*, 301 Kan. 898, 909, 349 P.3d 457 (2015).

The law regarding motor vehicles searched based on the exception of probable cause with exigent circumstances is well settled:

> "A vehicle's mobility is considered an exigent circumstance. Consequently, a subclass of the probable-cause-plus-exigent-circumstances exception is called the automobile exception. The automobile exception provides that a warrant is not required to search a vehicle as long as 'probable cause exists to believe the vehicle contains contraband or evidence of a crime' and the vehicle is 'readily mobile.' The probable cause analysis reviews the totality of the circumstances to determine the probability that the vehicle contains contraband or evidence. [Citations omitted.]" *Doelz*, 309 Kan. at 143.

"[I]f the material facts are undisputed, as they are in [this] appeal, the suppression issue simply presents a question of law subject to de novo review. [Citation omitted.]" *Parker*, 309 Kan. at 5. Because the parties do not dispute that Burnett's truck was mobile, the sole question before our court is whether probable cause existed to search the truck.

The United States Supreme Court has recognized the difficulty in precisely defining the concept of probable cause, referring to it as "'fluid,'" "'not readily, or even usefully, reduced to a neat set of legal rules,'" and "'incapable of precise definition or

5

quantification into percentages.'" See *State v. Knight*, 55 Kan. App. 2d 642, 647, 419 P.3d 637 (2018). The Kansas Supreme Court has stated that "[p]robable cause to search a vehicle exists when the totality of the circumstances indicates there is a fair probability that the vehicle contains contraband or evidence of a crime. [Citation omitted.]" *State v. Howard*, 305 Kan. 984, 990, 389 P.3d 1280 (2017). Our Supreme Court has also explained that while probable cause "'must not be confused with proof beyond a reasonable doubt of guilt' . . . probable cause goes beyond mere suspicion. [Citations omitted.]" *State v. Oliver*, 280 Kan. 681, 691, 124 P.3d 493 (2005), *disapproved of on other grounds by State v. Anderson*, 287 Kan. 325, 334, 197 P.3d 409 (2008).

On appeal, the State identifies the individual factors that Detective Graber said constituted the totality of circumstances which justified the warrantless search of Burnett's truck based on probable cause. We have categorized these factors into two separate groups and will consider the factors to evaluate their probative value in establishing probable cause.

*Detective Graber's Knowledge of Burnett's Association with Illegal Drugs*

The State asserts: "In this case, [Detective] Graber testified that the Defendant went inside two different houses that were under investigation for drug distribution. Before the Defendant was stopped, [Detective] Graber saw the Defendant exit a house where methamphetamine had been sold recently."

The record shows that Detective Graber stated that he and Burnett "had conversations in the past where he told me that he's a user." This testimony did not inform the district court about the number of conversations, the context, type of drugs used, or the approximate date these conversations took place. As a result, the district court had no facts to evaluate whether, for example, the conversations were shortly

6

before this incident or years ago. In short, without some factual detail, this testimony was of little probative weight.

Detective Graber also testified that on the day he observed Burnett park his truck, the detective was "doing an active investigation on and we had controlled purchases from that residence already." The detective testified that "we were working that residence for the sale and distribution of marijuana, methamphetamine, and also cocaine." Once again, this testimony is noteworthy for its vague and conclusory terminology. Having an "active investigation" and "working that residence" for illegal drugs does not necessarily provide a factual basis for why the residence was the subject of a drug investigation. The detective's reference to "we had controlled purchases from that residence already" could have had importance if there were additional facts regarding the number of purchases, the types of drugs and the approximate date these transactions occurred. While we could understand "already" to mean on the day that Burnett was parked in front of the residence, we could also interpret this reference to a date weeks or months prior. This ambiguous testimony also lessens the probative value of the inference that Burnett was transporting drugs simply because he carried a black satchel into the residence and carried it out of the residence a short time later. In sum, the lack of specific factual information conveyed by Detective Graber substantially undercut the potential value of his testimony establishing probable cause.

Detective Graber also alluded to another suspected drug house where Burnett apparently made a brief stop before the last residence he visited before his arrest. The detective testified that officers were "actively working" the house for distribution of methamphetamine. Here again, simply because officers suspected a residence as a location for drug dealing—with no facts presented to the district court to bolster that suspicion or investigation—does not constitute probative evidence to tie Burnett to drug activity.

Inexplicably, the record also reveals the potential for testimony that may have contributed to the probable cause analysis but was not pursued by the State. For example, under cross-examination by Burnett, Officer Suda testified that at the time of the traffic stop he recognized Burnett as a former prison inmate. On redirect examination, no inquiry was made to ascertain if Burnett had been in prison recently as a result of a drug offense.

In summary, while the record revealed numerous opportunities for the State to develop evidence establishing a nexus between Burnett and his use or sale of illegal drugs—and consequently establish an important factor contributing to Detective Graber's probable cause determination—the evidence presented was too vague, too general, and too conclusory to have much probative weight.

*The Circumstances Relating to the Arrest of Fisher*

The State highlights the arrest of the fleeing passenger, Fisher, as an important factor in the probable cause calculus. Once again, the evidence presented at the motion to suppress hearing regarding Fisher was rather tenuous. At the outset, although we know that Fisher entered the truck shortly before the traffic stop, there was no evidence that he came from the same residence under investigation as Burnett. In fact, the record does not explain where Fisher came from prior to entering Burnett's truck. As a result, there were no facts associating Fisher with Burnett or Burnett's visit to the residence.

Second, as previously discussed, Officer Suda testified that he recognized Fisher "[f]rom previous dealings with him." Similarly, Detective Graber testified that he recognized Fisher once he fled from the truck and began to run away. Yet, the circumstances, dates, and significance of these prior law enforcement encounters were never addressed. Were drugs—in particular, methamphetamine—involved? Was there a

8

known relationship between Burnett and Fisher, especially regarding drug use or dealing? There was no such evidence presented.

Third, there was substantial competent evidence that shortly after Fisher fled from Burnett's truck that he possessed a syringe and baggie with residue—suspected of being methamphetamine—inside both items. Although it is apparent that Fisher possessed these items while sitting inside Burnett's truck, there is no evidence that these items were previously in Burnett's possession or in his view during the brief time Fisher sat in the truck.

*Application of Caselaw to the Facts of this Search and Seizure*

The State analogizes this factual scenario to *Knight*, 55 Kan. App. 2d at 648-49. In *Knight*, a sheriff's deputy made a valid traffic stop of Knight's vehicle. While conversing with the driver, the deputy saw that the passenger had a glass pipe tucked inside her waistband, and the deputy believed it was the type of pipe used to smoke methamphetamine. As a result, the deputy searched the vehicle and discovered drugs.

After the State charged Knight with various drug crimes, he filed a motion to suppress evidence. The district court granted the motion, holding that "the law was 'in flux' as to whether the discovery in plain view of drug paraphernalia on the person of a passenger riding [in] a vehicle established probable cause to search the driver's vehicle." 55 Kan. App. 2d at 644.

The State appealed, and a panel of this court held that the officer "had probable cause to search in those places that ultimately yielded the evidence subject to [the] motion to suppress." 55 Kan. App. 2d at 648. This court noted that "[b]oth of the enclosed areas within which the contraband was found were within [the passenger's] reach while she was sitting in the passenger seat," which made it unnecessary for the

9

Knight court "to determine whether the totality of the circumstances here would have permitted [the officer] to conduct a warrantless search of those areas in the car outside of [the passenger's] reach." 55 Kan. App. 2d at 649. The *Knight* court stated:

> "[W]e intentionally limit our ruling today to the legal issue for determination under the facts as presented: the totality of the circumstances establishes a fair probability that additional drug paraphernalia and drugs might be discovered in that part of the car within [the passenger's] reach while a passenger in [the driver's] car." 55 Kan. App. 2d at 649.

Returning to the case on appeal, the State argues that under *Knight*, Detective Graber's discovery of "drug paraphernalia and suspected drugs in the passenger's possession" created "probable cause to search areas within the passenger's reach and adds to the suspicion that there are drugs in [Burnett's] satchel that he was carrying in and out of the suspected drug house." However, *Knight* is distinguishable from the present case because the officer in *Knight* saw drug paraphernalia in the passenger's possession while the passenger was still in the car. More importantly, it is apparent that at the time of the car stop, Knight had a clear view of the drug paraphernalia possessed by his passenger. In the present case, there was no showing that Burnett had a view or knowledge of Fisher's drug paraphernalia at the time Fisher was a passenger in the truck.

Both parties highlight *State v. Anderson*, 281 Kan. 896, 136 P.3d 406 (2006). Burnett contends that *Anderson* supports his position, and the State argues that *Anderson* is distinguishable. We agree with the State. *Anderson* is distinguishable because it held that the discovery of drugs on a passenger of a vehicle does not create probable cause to search or arrest the driver. 281 Kan. at 904-09. The issue presented in this appeal is not whether there was probable cause to search or arrest Burnett, but whether there was probable cause to search Burnett's vehicle.

10

Our research has found a case more analogous to this one that was issued after the parties filed their briefs. In *Doelz*, the morning after two black males robbed a credit union, a police officer saw a vehicle similar to a vehicle reportedly involved in the robbery. The vehicle was parked outside a residence the officer knew was "'involved with drug activity,'" and the officer saw a black man standing talking to the vehicle's occupants. 309 Kan. at 135. After the vehicle left, the officer followed it and initiated a traffic stop. The officer "recognized [the two passengers] from prior encounters"; he associated the front-seat passenger "with a residence 'notorious for the use of narcotics, primarily methamphetamines,' and [that passenger] had previously admitted to using methamphetamine." 309 Kan. at 135.

As the officer was arresting the back-seat passenger for outstanding arrest warrants, he saw a container that he believed contained a digital scale. The officer took the container, opened it, and confirmed there was a digital scale in the car. Doelz, the driver of the vehicle, denied ownership of the scale and did not agree to the officer's request to search the vehicle. When the officer said that "based on the evidence he had already found, [he] was legally authorized to search the vehicle even without permission," the driver replied, "'If you have to, go ahead.'" 309 Kan. at 135. The search of the vehicle revealed drugs, drug paraphernalia, and cash. Doelz filed a motion to suppress the evidence, which the district court denied, and the driver was convicted of possession of methamphetamine with intent to distribute. Our court affirmed the conviction. *State v. Doelz*, No. 113,165, 2016 WL 3570515 (Kan. App. 2016) (unpublished opinion).

On review, the Kansas Supreme Court agreed with Doelz' argument that the plain view exception to the general warrant requirement did not give the officer authority to enter the vehicle to seize the container or to open the container to reveal the digital scale. 309 Kan. at 140-42. Our Supreme Court also addressed the district court's holding that the search of the vehicle was lawful under the automobile exception:

11

"Here, the [Court of Appeals] panel found the totality of the circumstances supporting [the officer's] belief that the [vehicle] contained contraband included:

"'the presence of the closed digital scale recognized by the officer as drug paraphernalia used in drug sales; the officer's observation of the Blazer and its passenger speaking with a man at a known drug-complaint residence immediately before the stop; [the driver's] statement that he had stayed at the house of a known drug dealer the night before the stop; and the officer's knowledge of a passenger's admitted use of methamphetamine.' [Citation omitted.]

"We have determined above that evidence of the presence of the digital scale should have been suppressed. Without erroneously considering the [scale], the other circumstances were insufficient to establish a fair probability that the vehicle contained contraband at the time it was searched.

"The observed conversation between the vehicle occupants and a man at a 'known drug-complaint residence' is nebulous. Were the drug complaints about that residence that people used drugs there or were they that people sold drugs there? If the former, it is not a fair probability that the drugs consumed at the house would be found in the vehicle when the users leave the residence. Moreover, a man conversing with one of the vehicle occupants means nothing without some information about the man and his connection to drug sales. Pointedly, the officer did not relate observing the normal indicia of a drug transaction, e.g., exchanging something through the car window during a short visit. Further, the prior confessions of past methamphetamine use by one of the passengers might further the officer's hunch that the passenger keeps the drug with him at all times, but it does not further the notion that the drug is probably contained within this car at this time. In short, the district court erred in finding the automobile exception to the warrant requirement applied in this case." 309 Kan. at 143-44.

Similarly, in the present case, although Detective Graber testified that Burnett had admitted previously to being "a user," the temporal proximity of that admission to the events underlying this case is unknown. Although controlled buys of illegal drugs had apparently occurred at the residence Burnett was seen visiting, it is unknown when those controlled buys occurred. Moreover, there was no testimony regarding the drugs purchased during those controlled buys. The totality of the circumstances was that a man

12

who previously admitted to using drugs carried a satchel into and—15 to 20 minutes later—out of a residence where controlled law-enforcement drug buys had once occurred.

Even more tenuous is any evidence connecting Fisher to a belief that contraband was in Burnett's truck. The fact that Fisher had run away from the truck did not further the notion that drugs probably remained in the truck. And there was no evidence that Fisher had been in Burnett's truck at any other time or any information supporting the link that drugs found on Fisher's person meant that drugs were in Burnett's truck.

In conclusion, because the totality of the circumstances did not establish probable cause to believe there was contraband or evidence of a crime in Burnett's truck, the automobile exception to the general warrant requirement did not apply. We hold the district court did not err in suppressing the evidence.

Affirmed.